**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SWITCH, LTD. | |
| Plaintiff, | |
| | CIVIL ACTION NO. 2:17-cv-574-JRG |
| v. | |
| ALIGNED DATA CENTERS, LLC and | **JURY TRIAL DEMANDED** |
| MTECHNOLOGY, INC. | |
| Defendants. | |

**DEFENDANT ALIGNED DATA CENTERS, LLC'S MOTION TO DISMISS**
**<u>PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT</u>**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................. 1

II.  STATEMENT OF THE ISSUES ............................................................ 2

III.  FACTUAL BACKGROUND ................................................................. 2

    A.  Switch's Pre-Filing Lack Of Basis To Claim Infringement ................................... 2

    B.  Switch's Complaint's Lack Of Basis To Claim Infringement ................................ 2

    C.  Switch's Indirect Infringement Allegations ........................................................... 4

IV.  LEGAL STANDARD ............................................................................ 5

V.  ARGUMENT .......................................................................................... 7

    A.  This Court Should Dismiss Switch's Claim Of Direct Infringement As It Fails To Plausibly Give Rise To Relief .......................................................... 7

        1.  The Complaint Fails To Plausibly State A Claim for Infringement Of The '780 Patent ................................................................ 8

        2.  The Complaint Fails To Plausibly State A Claim for Infringement Of The '389 Patent .............................................................. 11

        3.  The Complaint Fails To Plausibly State A Claim for Infringement Of The '495 Patent .............................................................. 13

    B.  This Court Should Dismiss Switch's Claim Of Indirect Infringement ................................................................................................. 16

VI.  CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ passim

*Atlas IP, LLC v. Pac. Gas & Elec. Co.,*
No. 15-5469, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) ...............................................7

*Bartonfalls LLC v. Turner Broadcasting Sys., Inc.,*
No. 2:16-cv-1127-JRG-RSP, 2017 WL 1375205
(E.D. Tex. Mar. 15, 2017) ................................................................................................7, 8

*Becton Dickinson & Co. v. C.R. Bard, Inc.,*
992 F.2d 792 (Fed. Cir. 1990) ...........................................................................................7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................................1, 5, 6, 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012) ...........................................................................................6

*Bowlby v. City of Aberdeen, Miss.,*
681 F.3d 215 (5th Cir. 2012) ...........................................................................................5, 7

*Broadcom Corp. v. Qualcomm Inc.,*
543 F.3d 683 (Fed. Cir. 2008) ...........................................................................................16

*Commil USA v. Cisco Sys., Inc.,*
135 S. Ct. 1920 (2015) .......................................................................................................16

*Core Wireless Licensing S.A.R.L. v. Apple Inc.,*
2015 WL 5000397 (E.D. Tex. June 3, 2015) .....................................................................17

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
363 F.3d 1263 (Fed. Cir. 2004) .........................................................................................17

*Erickson v. Pardus,*
551 U.S. 89 (2007) .............................................................................................................11

*Kyocera Wireless Corp. v. Int'l Trade Comm'n,*
545 F.3d 1340 (Fed. Cir. 2008) .........................................................................................17

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC,*
594 F.3d 383 (5th Cir. 2010) .................................................................................6, 10, 13

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)..........................................................................17

*Papsan v. Allain*,
    478 U.S. 265 (1985).........................................................................................5

*Pozen, Inc. v. Par Pharm., Inc.*,
    800 F. Supp. 2d 789 (E.D. Tex. 2011)............................................................17

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
    No. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016) .....................................7

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)...............6, 7, 8, 11

*Villareal v. Wells Fargo Bank, N.A.*,
    814 F.3d 763 (5th Cir. 2016) ..........................................................................13

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) ............................................................................5

*Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*,
    Civil Action No. 15-1720, 2017 WL 568781 (E.D. La. Feb. 13, 2017) .............7

## STATUTES, RULES AND REGULATIONS

35 U.S.C. § 271(a) ................................................................................................7

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 5

Fed. R. Civ. P. 84 .................................................................................................6

## I.       INTRODUCTION

Plaintiff Switch, Ltd.'s ("Switch") Complaint against Defendant Aligned Data Centers LLC ("Aligned") is properly dismissed.

Switch alleges direct and indirect infringement of three patents based on its claims regarding Aligned data centers in Texas and Phoenix.  Switch's claims of infringement of the asserted patents (U.S. Patent Nos. 8,072,780 (the "'780 patent"), 8,180,495 (the "'495 patent"), and 9,622,389 (the "'389 patent") (collectively, "Patents-In-Suit")) consist solely of some pictures allegedly depicting various Aligned data center structures (*see* D.I. 1 at ¶¶ 59, 61, 63), and then an allegation that Aligned's data centers have some of the individual components mentioned in some of the patent claims.

For example, Switch alleges infringement of the claim 1 of the '780 Patent by including a picture of some servers, and an averment that Aligned data centers "contain an apparatus with 'support brackets,' 'cabinets,' a 'thermal shield,' 'tiered ladder rack supports,' and 'conduit holders' as claimed in the '780 Patent."  *Id*. at 59.  Switch does not provide any averment or explanation as to how Aligned data centers meet the actual elements of the hundred-plus word claim 1 of the '780 Patent – they simply list some components and say that they are somewhere in an Aligned data center.

Switch's complaint fails to set forth a plausible claim for patent infringement under *Iqbal* and *Twombly* and can be dismissed on that basis.  More important, however, is why Switch has failed to set forth a plausible claim of infringement.  The answer is simple: it cannot.  The very pictures that Switch submits with its Complaint establish that Aligned data centers do not have required, essential elements of the listed claims of the Patents-In-Suit.  And, where the evidence

submitted with Switch's Complaint establishes noninfringement, Switch's complaint can properly be dismissed as a matter of law.

## II.      STATEMENT OF THE ISSUES

The issue to be decided is whether Plaintiff's infringement claims set forth in the Complaint fail to state a claim upon which relief may be granted, and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.     FACTUAL BACKGROUND

### A.      Switch's Pre-Filing Lack Of Basis To Claim Infringement

Switch and Aligned compete for customers.  (D.I. 1-6.)  Prior to filing this lawsuit, Switch wrote a letter to Aligned referring to its patents.  In its letter, Switch effectively admitted that Switch had no basis to claim infringement by Aligned, but instead needed more information. (*See, e.g.*, D.I. 1-6.)  As Switch puts it in its Complaint, Switch "expressed its curiosity at Aligned's data center designs…."  (D.I. 1, ¶ 35.)

In the interim, however, despite the fact that Switch admitted it did not have a basis to claim infringement, Aligned learned that Switch was disparaging Aligned to potential customers, including a customer for which Switch and Aligned are currently competing.  (D.I. 1-6.)  When Aligned asked that Switch cease making its baseless claims, and issue corrective statements, Switch then filed this lawsuit.  (*Id.*; *see also* D.I. 1, ¶ 40.)

### B.      Switch's Complaint's Lack Of Basis To Claim Infringement

Despite the length of Switch's Complaint, it dedicates only a handful of paragraphs to alleged infringement of the Patents-In-Suit by Aligned.  With respect to the '780 patent, Switch alleges that Aligned's data centers infringe claim 1, but sets forth only a single sentence and two screenshots as purported evidence of infringement:

2

59. As shown in the picture below, Aligned's data centers contain an apparatus with "support brackets," "cabinets," a "thermal shield," "tiered ladder racks supports," and "conduit holders" as claimed in the '780 patent: [two screenshots from Aligned videos]

(*See id.* ¶ 59.)  As Switch acknowledges in its reproduction of claim 1 in paragraph 58 of its Complaint, the claim requires significantly more than the mere presence of five individual components.  The Complaint is, however, quite silent on how Aligned meets any of the actual elements set forth in claim 1, or how the pictures set forth in Paragraph 59 of the Complaint actually provide any basis to claim infringement.

Switch follows the same pattern with respect to the '389 patent.  Switch asserts that Aligned infringes claim 1 of the '389 patent based, again, on five standalone components recited in a claim that is longer and contains more limitations than claim 1 of the '780 patent:

As shown in the pictures below, Aligned's data centers contain an apparatus with "vertical support brackets," "horizontal support brackets," "tiered ladder rack supports," a "thermal barrier ceiling" and "thermal shield" as claimed in the '389 patent:  [two screenshots from Aligned videos]

(*See* D.I. 1 ¶ 61; *see also id.*, ¶ 60 (reproducing claim 1 of the '389 patent).)  Switch does not explain how the two screenshots from Aligned marketing videos meet any, let alone each and every, limitation of the claim.

Finally, with respect to the '495 patent, Switch alleges that Aligned infringes claim 1, which collectively spans almost an entire column in the patent.  Switch states only that:

63. As shown in the pictures below, Aligned's data centers comprise an apparatus with "cabinets," a "hot air containment chamber," and a "warm air escape gap" as claimed in the '495 patent:  [two screenshots from Aligned videos]

64.  Aligned's data centers also comprise an apparatus with a "control system" as claimed in the '495 patent with its data center infrastructure management (DCIM) software and/or Inertech's controller in conjunction with pressure differential and temperature sensors. *See, e.g.*, Exhibits I-J.

3

65.  For example, Aligned describes its system as one that is a "responsive" cooling system that provides an environment that "dynamically adapts to IT loads."

66. Aligned advertises its "Client Portal" for Data Center Information Management as including information related to "all of the components of your colocation environment, including footprint-level, rack-level, cooling system, and power system performance and utilization."

67. Inertech describes its controller as follows: "When this free-cooling cycle requires assistance, Inertech's controller brings the Danfoss Turbocor compressor online to provide incremental compression." Exhibit K.

(D.I. 1, ¶¶ 63-67.)  Paragraphs 63 and 64 amount to a recitation of only four individual

components (*i.e.,* cabinets," a "hot air containment chamber," a "warm air escape gap," and a

"control system") that make up only a small fraction of the specific requirements recited in

claim 1.  Switch's Complaint is entirely silent regarding all other claim requirements in the '495

patent.

## C.      Switch's Indirect Infringement Allegations

Switch also alleges that Aligned indirectly infringes the Patents-In-Suit.  While the

Complaint sets forth some conclusory recitations of the legal standard for induced infringement,

it does not offer a single, particularized fact explaining how Aligned has acted to cause any

infringement.  Rather, the Complaint makes the following generalized allegations:

69. Aligned Data Centers LLC has actual knowledge of the patents-in-suit or was willfully blind to those patents.

70. On July 21, 2017, Switch wrote to Aligned Data Centers informing Aligned of the '780 and '389 patents. The '495 Patent is part of the same patent family.

71. Aligned Data Centers LLC indirectly infringes the patents-in-suit by inducing infringement by others, such as its customers using the data centers, by, for example, encouraging those customers to use the infringing apparatuses described above.

72. Aligned took the above actions intending to cause infringing acts by others.

> 73. Aligned was aware of the patents-in-suit and knew that the others' actions, if taken, would constitute infringement of the patents-in-suit. Alternatively, Aligned believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions.

(D.I. 1, ¶¶ 69-73.)

## IV.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted when a complaint fails to state a claim upon which relief can be granted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level," and they must be sufficient to "state a claim for relief that is plausible on its face." *Id.* at 555, 570.

When deciding a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in the complaint in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1985). "A complaint is insufficient if it offers only 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'" *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of a cause of action, supported by mere conclusory statements," or "naked assertions devoid of further factual enhancement," do not suffice. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, for a complaint to survive a motion to dismiss, the complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Since the abrogation of Rule 84 and the appendix Forms to the Federal Rules of Civil

Procedure in December 2015, courts in this district have held that the pleading standard required

by *Twombly* and *Iqbal* apply to both direct and indirect patent infringement claims.  *See Ruby*

*Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D.

Tex. June 28, 2016) ("Now, to state a claim for direct infringement, a plaintiff must explicitly

plead facts to plausibly support the assertion that a defendant 'without authority makes, uses,

offers to sell, or sells any patent invention during the term of the patent.'"); *In re Bill of Lading*

*Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336–37 (Fed. Cir. 2012) (same

for indirect infringement).  Accordingly, all of Switch's claims are to be examined for plausible

sufficiency in light of *Twombly* and *Iqbal*.

In considering a motion to dismiss under *Twombly* and *Iqbal*, a court can follow a "two-

pronged approach" to evaluate the sufficiency of a complaint.  *Iqbal*, 556 U.S. at 679.  First, it

should identify which pleading allegations are no more than conclusions, and therefore are not

entitled to an assumption of truth.  *See id.*  Then, a court can determine whether the "well-

pleaded factual allegations," assumed to be true, "plausibly give rise to an entitlement to relief."

*Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a

sheer possibility that a Defendant has acted unlawfully."  *Id.* at 678 (internal quotation marks

omitted).  In making its determination, the court may consider "the complaint, any documents

attached to the complaint, and any documents attached to the motion to dismiss that are central to

the claim and referenced by the complaint."  *See Lone Star Fund V (U.S.) L.P. v. Barclays Bank*

*PLC*, 594 F.3d 383, 387 (5th Cir. 2010).   Switch's Complaint for patent infringement against

Aligned should be dismissed under this controlling precedent.

## V.      ARGUMENT

### A.      This Court Should Dismiss Switch's Claim Of Direct Infringement As It Fails To Plausibly Give Rise To Relief

Switch's conclusory allegations that Aligned infringes the Patents-In-Suit fail to plausibly state a claim for relief.  They amount to nothing other than a recitation of the elements of 35 U.S.C. § 271(a) and are not entitled to any assumption of truth.[1]  *See Bowlby*, 681 F.3d at 219.  In fact, Switch does not plead a theory of infringement concerning all recited elements of even a single representative claim.  (*See, e.g.*, D.I. 1 ¶¶ 58-59.)  For this reason, the Complaint fails to describe how the accused data centers could plausibly infringe the Patents-In-Suit.  *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 992 F.2d 792, 796 (Fed. Cir. 1990) (A claim of literal infringement requires a showing that "each and every limitation set forth in a claim appears in the accused product.").  Since Form 18 was abrogated, courts in this District have rejected this type of conclusory pleading.  *See, e.g.*, *Ruby Sands*, 2016 WL 3542430, at *4 (dismissing complaint when plaintiff did not plead facts "that even remotely suggest" the defendant makes, uses, offers to sell, or sells the patented invention); *Bartonfalls LLC v. Turner Broadcasting Sys., Inc.*, No. 2:16-cv-1127-JRG-RSP, 2017 WL 1375205, at *2 (E.D. Tex. Mar. 15, 2017) (dismissing infringement allegations "where based on the claims, specifications, its experience, and common sense, the Court can readily conclude that plaintiff's infringement allegations are

---

[1]  Courts have increasingly held that a complaint does not state a claim for relief under *Twombly* and *Iqbal* unless it "plead[s] facts alleging that the accused product infringes each and every element or limitation of at least one patented claim."  *See Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, Civil Action No. 15-1720, 2017 WL 568781, at *3–4 (E.D. La. Feb. 13, 2017); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016); *Atlas IP, LLC v. Pac. Gas & Elec. Co.*, No. 15-5469, 2016 WL 1719545, at *5 (N.D. Cal. Mar. 9, 2016).  Even "simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient."  *Atlas IP*, 2016 WL 1719545, at *2.

implausible on their face."), *adopted by* 2017 WL 1375205 (E.D. Tex. Apr. 7, 2017) (ordering

dismissal for failure to state a claim for patent infringement with prejudice).

### 1.     The Complaint Fails To Plausibly State A Claim for Infringement Of The '780 Patent

Switch's allegations that Aligned infringes the '780 patent does not and cannot give rise

to a claim for relief.  Switch alleges that Aligned infringes claim 1 of the '780 patent, which is

the sole independent claim of that patent.  (D.I. 1-1.)  Claim 1 is four paragraphs in length, spans

almost half a column in the patent, and features over 290 words that form multiple elements

specifically configured in a particular design to perform a particular function.  (*See* D.I. 1-1,

¶ 58.)  It is black letter law that each recited element is a separate limitation that Aligned's

technology must meet in order to infringe the '780 patent.  The entirety of Switch's infringement

allegations, however, lists a limited number of standalone components mentioned in the claim

untethered to any of the requirements of the claim regarding those components:

> 59. As shown in the picture below, Aligned's data centers contain an apparatus
> with "support brackets," "cabinets," a "thermal shield," "tiered ladder racks
> supports," and "conduit holders" as claimed in the '780 patent:  [two screenshots
> showing Aligned data centers]

(*See id.* ¶ 59.)  As support for its conclusory, incomplete statement, Switch incorporates two

screenshots from Aligned marketing videos illustrating its data center design.  But, Switch does

not provide any explanation of how these screenshots plausibly illustrate a claim of infringement

of the claim as a whole.  Indeed, Switch says nothing about the screenshots at all.  This

barebones pleading fails to plausibly plead a claim of infringement of claim 1 of the'780 Patent.

*See Ruby Sands*, 2016 WL 3542430, at *4 (dismissing case where "the Court cannot make a

plausible inference of direct infringement based on the facts pleaded in the [complaint]"); *Becton*

*Dickinson*, 992 F.2d at 796 (noting that a claim of literal infringement requires a showing that

"each and every limitation set forth in a claim appears in the accused product.").

More importantly, Switch's Complaint establishes that Switch <u>cannot</u> plead a claim of infringement of claim 1 of the '780 Patent.  As also discussed in Aligned's Counterclaims, filed proximate to this motion, there are many reasons why Aligned does not and cannot infringe claim 1.  As one example, claim 1 of the'780 Patent requires "support brackets."  But, of course, it does not require just any "support brackets."  As set forth in the claim, the "support brackets" must have several features.  They must support "power wires and conduits" and "communication wiring" on one side, and a "thermal shield" on the other side.  (*See* D.I. 1-1 at Claim 1.)  Further, in an area "above the plurality of cabinets," the support brackets must include a "plurality of tiered ladder rack supports" to establish a plurality of different tiers "outside of the hot air containment chamber" so that the tiers are adapted to hold "the electronic equipment power wires and conduits and the communication wiring."  (*Id.*)  Said more simply, the support bracket has to attach to a thermal shield on one side, and, on the other side, have multiple tiers, outside of the containment area, above the cabinets, to hold power wires and communication wiring.  Such an arrangement is depicted in Figure 2B of the patent:



FIG. 2B

9

Switch's Complaint includes a picture of Aligned's power and communications cabling setup, which is here annotated to label the features depicted in the picture Switch submitted:



*See, e.g.*, Complaint, ¶ 61
(citing http://www.datacenterdynamics.com/content-tracks/colo-cloud/aligned-plano-power-andcooling-on-demand/97039.fullarticle)

And, as is clearly depicted in Switch's own submitted picture, Aligned's data center cannot meet the requirements of the claim.  The power lines run <u>inside</u> of the aisle, not outside, as required by the claim.  The communication cabling is run through a cable tray outside of the aisle, but it is hung from support bars attached to the ceiling grid, and those support bars are not attached to anything else, much less support anything that could be claimed as a "thermal shield," as required.  So, they cannot be the claimed "support brackets."  And, as clearly depicted, there simply are no tiers.

The accused setup thus cannot infringe the asserted claim, based solely on the evidence cited in Switch's Complaint.  *See Lone Star Fund V*, 594 F.3d at 387 ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached

10

to the motion to dismiss that are central to the claim and referenced by the complaint").  On this basis, Switch's claim of infringement of claim 1 of the '780 patent is properly dismissed.

### 2.     The Complaint Fails To Plausibly State A Claim for Infringement Of The '389 Patent

Switch's claims of infringement of the '389 patent fare no better.  Again, Switch's sole basis for alleged infringement is a single paragraph that states that Aligned data centers contain some of the required components of claim 1 of the '389 patent:

> As shown in the pictures below, Aligned's data centers contain an apparatus with "vertical support brackets," "horizontal support brackets," "tiered ladder rack supports," a "thermal barrier ceiling" and "thermal shield" as claimed in the '389 patent

(*See* D.I. 1 ¶¶ 60-61)  Switch then points to two screenshots showing Aligned data centers structures.  (*Id.* ¶ 61.)  Again, because the Complaint fails to address the actual required elements of the exemplary claim of the '389 patent, it does not plausibly set forth a claim for relief, and on that basis can be dismissed.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (dismissing complaint because it failed to provide "fair notice of what the . . . claim is and the grounds upon which it rests") (ellipsis in original); *Ruby Sands*, 2016 WL 3542430, at *4.

And, again, Switch's failure to provide a basis for infringement is not accidental.  As with the '780 patent, and as similarly discussed in Aligned's Counterclaims, the very evidence that Switch submits in its Complaint establishes non-infringement for multiple reasons.

As one example, Aligned's data center cannot infringe the alleged exemplary claim 1 of the '389 patent because – just like claim 1 of the'780 patent – claim 1 of the '389 patent requires tiered ladder rack supports for "a plurality of different tiers outside" of a claimed "hot air containment chamber" for "power wires and communication wiring."  But, as the above pictures confirm, Aligned's system has no such tiers, and the power wires run inside the aisle, not outside the aisle.

11

Nor does Aligned's system contain any of the "cool air ductwork" required by the claim. First, there is zero ductwork depicted in any of the pictures submitted by Switch.  Second, even Switch does not claim that the Aligned system uses "cool air ductwork."  (*See* D.I. 1, ¶ 61.) And, third, the videos from which Switch excerpted its pictures clearly set forth why there is no cool air ductwork:  Aligned does not use the less efficient method of removing heat by transporting hot and cold air through ducts and/or plenums in a duct distribution system.  Instead, as seen below, Aligned uses an innovative approach to removing heat by circulating *refrigerant* through microchannel coils placed directly above the server racks.  The heated refrigerant is then pumped back to a heat exchanger where the heat is transferred to a water/glycol heat rejection loop, rather than having air being ducted around in cool air or hot air ducts.  This Aligned refrigerant system – which cannot meet the claim language – is clearly depicted in one of the videos from which Switch submitted a screen shot in its Complaint (annotated here for convenience):



*See, e.g.,* Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=2YnPQ4KmMKU)

Switch's claims can be rejected as a matter of law, because Aligned simply does not have the "cool air ductwork" required by the claim and Switch does not and cannot claim otherwise.[2]

Because Switch does not set forth a basis for infringement, and because the materials submitted in Switch's complaint establish non-infringement, Switch's claims regarding the '389 Patent are properly dismissed.

### 3. The Complaint Fails To Plausibly State A Claim for Infringement Of The '495 Patent

Switch's claims under the '495 patent are also properly dismissed.  Again, Switch makes a bare assertion that a few, limited individual components listed in the exemplary claim are in Aligned's data centers, but Switch provides zero allegations plausibly suggesting that Aligned's systems meets any of the actual elements of the exemplary claim 1:

> 63. As shown in the pictures below, Aligned's data centers comprise an apparatus with "cabinets," a "hot air containment chamber," and a "warm air escape gap" as claimed in the '495 patent…
>
> 64.  Aligned's data centers also comprise an apparatus with a "control system" as claimed in the '495 patent with its data center infrastructure management (DCIM) software and/or Inertech's controller in conjunction with pressure differential and temperature sensors. *See, e.g.*, Exhibits I-J.

(D.I. 1, ¶¶ 63-67.)

---

[2]  Aligned acknowledges that it has annotated the pictures Switch has submitted to, for example, label the refrigerant lines in Switch's cited evidence.  Aligned submits, however, that the video itself has been incorporated by reference in the Complaint as alleged evidence of infringement, meaning what it shows can be taken into account in assessing whether Switch has plausibly pleaded infringement.  *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("The court may [] also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'")(citation omitted); *Lone Star Fund V*, 594 F.3d at 387 ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").  The pictures, even without annotation, clearly do not illustrate any cool air ductwork.

And, here too, the screenshots from Aligned videos in the Complaint, along with the other illustrations cited therein, establish that Switch does not and cannot plausibly set forth a claim that Aligned infringes claim 1 of the '495 patent.

For example, the Aligned system does not contain "a warm air escape gap disposed within the building and disposed above each of the hot air containment chambers, the warm air escape gap collecting the heated air from each of the hot air containment chambers and feeding the heated air to the air conditioning units, the warm air escape gap being lowerly bounded by a ceiling, wherein the ceiling contains ceiling openings that each align with one of the hot air escape openings in each of the hot air containment chambers", as recited in claim 1 of the '495 patent and depicted in Figure 1(c).



FIG. 1C

As discussed and shown above, Aligned uses a refrigerant system, as illustrated in the video cited by Switch in Paragraph 63 of the Complaint, rather than a system of moving heated air up from servers through a ceiling gap to air conditioning units, as required.  Because Aligned

uses an entirely different design, Aligned does not need to, and does not have the "warm air

escape gaps" that are "lowerly bounded by a ceiling" to route around warm air.  Instead, as

clearly shown in the pictures and video that Switch relies upon in Paragraph 63 of the Complaint,

Aligned has an open grid ceiling:



Source: https://www.youtube.com/watch?v=KCaPCc6eHpk at 1:22 (last visited Aug. 7, 2017).



*See, e.g.,* Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=2YnPQ4KmMKU)

Nor does the Aligned system contain "cool air ducts disposed within the building that

deliver the cool air from the plurality of air conditioning units toward a periphery of the plurality

of rows of cabinets within each of the plurality of cabinet clusters."  The required "cool air ducts" are nowhere depicted in any picture submitted by Switch, cool air ducts for the cabinets are entirely inconsistent with the refrigerant system that Aligned actually uses and, critically, not even Switch contends that there are any "cool air ducts" as recited in claim 1 of the '495 patent in Aligned's system.  (*See generally* D.I. 1, ¶ 63.)

As with the other two asserted patents, Switch's infringement count against the '495 patent should be dismissed because the Complaint plausibly fails to state a claim for relief and, in fact, sets forth screenshots for Aligned's data centers showing that relief is not proper.

###### B.      This Court Should Dismiss Switch's Claim Of Indirect Infringement

Switch alleges indirect infringement under an inducement theory.  (*See* D.I. 1 ¶ 71 ("Aligned . . . indirectly infringes the patents-in-suit by inducing infringement by others, such as its customers using the data centers, by, for example, encouraging those customers to use the infringing apparatuses described above.").)  To prevail on a claim of induced infringement, a "patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possesses specific intent to encourage another's infringement.'" *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697 (Fed. Cir. 2008); *see also Commil USA v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926–28 (2015) (mere knowledge of a patent is insufficient for inducement liability; rather, there must be "knowledge that the induced acts constitute patent infringement").  Switch's threadbare allegations, however, fail to adequately set forth the requisite level of detail plausibly entitling Switch to relief and should be dismissed.

To the extent that Switch seeks to base its indirect infringement allegations on its direct infringement allegations, the Complaint is legally deficient.  As discussed above, Switch fails to state what act(s) (*i.e.*, what direct infringement) Aligned is supposedly indirectly causing.  There

16

can be no indirect infringement by a defendant in the absence of some direct infringement by someone.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of direct infringement."); *Pozen, Inc. v. Par Pharm., Inc.*, 800 F. Supp. 2d 789, 799 (E.D. Tex. 2011) ("Direct infringement must be established as a predicate for each act of indirect infringement.").  Because Switch does not plausibly allege how Aligned's data centers supposedly directly infringe the Patents-In-Suit, Switch cannot plausibly plead indirect infringement.

In addition to this fundamental defect, Switch fails to support any charge that Aligned had a "specific intent to encourage infringement."  *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990).  The only reference to intent in the Complaint is a single cursory sentence which reads in whole "Aligned took the above actions intending to cause infringing acts by others."  (D.I. 1, ¶ 72.)  This is nothing more than a legal conclusion that is not entitled to a presumption of truth.  *See Iqbal*, 556 U.S. at 678.

Even if Switch had actually alleged what infringement Aligned was supposedly inducing, Switch's generalized allegations regarding Aligned's business of providing data center services (D.I. 1, ¶¶ 71, 73) are insufficient as a matter of law to establish the specific intent to induce any infringement.  *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (holding that generally intending to cause acts that produce infringement "falls far short of the necessary intent showing for inducement"); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015)  (dismissing inducement claims in view of generic allegations insufficient to create a reasonable inference of specific intent)..

17

There is simply no pleading allegation to directly or circumstantially sustain a claim that Aligned actively induced infringement of the Patents-In-Suit by someone else.  Thus, this Court should dismiss Switch's claim for indirect infringement against Aligned.

## VI.   CONCLUSION

For the foregoing reasons, Aligned respectfully requests that this Court grant the instant motion and dismiss Switch's Complaint.

Dated: August 16, 2017                                         Respectfully submitted by:

*/s/ Michael E. Jones*
Michael E. Jones
SBN: 10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-531-3939
mikejones@potterminton.com

Michael A. Berta
Michael.berta@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas H. Lee
Nicholas.lee@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

ATTORNEYS FOR DEFENDANT
ALIGNED DATA CENTERS, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 16, 2017, a true and correct copy of the foregoing was served to the parties counsel of record via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Michael E. Jones*