**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SWITCH, LTD.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALIGNED DATA CENTERS, LLC and MTECHNOLOGY, INC.<br><br>　　　　　Defendants. | CIVIL ACTION NO. 2:17-cv-574-JRG<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT ALIGNED DATA CENTERS, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Defendant Aligned Data Centers, LLC ("Aligned") answers the Complaint for Patent Infringement of Plaintiff Switch, Ltd. ("Switch") as follows:

1.　　　Aligned specifically denies that it has committed any acts of infringement. Aligned is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1 of the Complaint, and therefore denies them.

2.　　　Aligned denies the allegations contained in paragraph 2 of the Complaint to the extent and as they relate to Aligned. Moreover, Aligned specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 2 of the Complaint are directed to MTechnology, Inc. ("MTechnology"), Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the Complaint.

3.　　　Aligned denies the allegations contained in paragraph 3 of the Complaint to the extent and as they relate to Aligned. Moreover, Aligned specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 3 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint.

4.     Aligned denies the allegations contained in paragraph 4 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 4 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 of the Complaint.

5.     Aligned denies the allegations contained in paragraph 5 of the Complaint.

6.     Aligned denies the allegations contained in paragraph 6 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 6 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint.

7.     Aligned denies the allegations of paragraph 7 of the Complaint and specifically denies that it has committed any acts of infringement.

## THE PARTIES

8.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint.

9.     Aligned admits that it is a Delaware limited liability company and has its principal place of business at 60 Backus Avenue, Danbury, CT.  Aligned denies the remaining allegations of paragraph 9 of the Complaint.

10.    Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.    The allegations in paragraph 11 are legal conclusions to which no answer is required.  To the extent any answer is required, Aligned admits that this action involves the United States patent laws, and that this Court has subject matter jurisdiction over patent law claims.  Aligned denies any remaining allegations in paragraph 11.

12.     The allegations in paragraph 12 are legal conclusions to which no answer is required.  To the extent that any answer is required, Aligned does not contest that there is personal jurisdiction in Texas solely for the purpose of this action.

13.     Aligned admits that it has transacted business in the States of Texas, that it has performed services at the facilities of an affiliate located at 2800 Summit Ave., Plano, Texas 75074, and that venue for this case is governed by 28 U.S.C. § 1400(b).  Aligned denies that venue is convenient in the Eastern District of Texas. Aligned denies the remaining allegations in paragraph 13 of the Complaint, and specifically denies that it has committed any acts of infringement within the Eastern District of Texas, or any other district in Texas, or anywhere else in the world.

14.     Aligned denies the allegations contained in paragraph 14 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 14 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint.

**PATENTS-IN-SUIT**

15.     Aligned admits that, according to the face of the patent, U.S. Patent No. 8,072,780 ("'780 patent"), which appears to be attached as an exhibit to the Complaint, is entitled, "Integrate Wiring System and Thermal Shield Support Apparatus for a Data Center" and bears an issue date of December 6, 2011.  Aligned denies that the '780 patent is valid.  Aligned is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15 of the Complaint, and therefore denies them.

16.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint, and therefore denies them.

17.     Aligned admits that, according to the face of the patent, U.S. Patent No. 8,180,495 ("'495 patent"), which appears to be attached as an exhibit to the Complaint, is entitled, "Air Handling Control System for a Data Center" and bears an issue date of May 15, 2012.  Aligned

denies that the '495 patent is valid. Aligned is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 17 of the Complaint, and therefore denies them.

18. Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the Complaint, and therefore denies them.

19. Aligned admits that, according to the face of the patent, U.S. Patent No. 9,622,389 ("'389 patent"), which appears to be attached as an exhibit to the Complaint, is entitled, "Electronic Equipment Data Center and Server Co-Location Facility Configurations and Methods of Using the Same" and bears an issue date of April 11, 2017. Aligned denies that the '389 patent is valid. Aligned is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19 of the Complaint, and therefore denies them.

20. Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint, and therefore denies them.

## GENERAL ALLEGATIONS

### I. Switch's Innovative Technology

21. In response to paragraph 21 of the Complaint, Aligned incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

22. Aligned, on information and belief, denies the allegations of paragraph 22 of the Complaint.

23. Aligned, on information and belief, denies the allegations of paragraph 23 of the Complaint.

24. Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the Complaint, and therefore denies them.

25. Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the Complaint, and therefore denies them.

26.     Aligned, on information and belief, denies the allegations of paragraph 26 of the Complaint.

27.     Aligned admits that computer servers consume power and generate heat and that effectively and efficiently removing such heat has been an issue in data center operations.  On information and belief, Aligned denies the remaining allegations of paragraph 27 of the Complaint.

28.     Aligned, on information and belief, denies the allegations of paragraph 28 of the Complaint.

29.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the Complaint, and therefore denies them.

30.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 of the Complaint, and therefore denies them.

31.     Aligned, on information and belief, denies the allegations of paragraph 31 of the Complaint.

32.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint, and therefore denies them.

33.     Aligned, on information and belief, denies the allegations of paragraph 33 of the Complaint.

## II.     Aligned's Unauthorized Infringement

34.     Aligned denies the allegations contained in paragraph 34 of the Complaint.

35.     Aligned admits that a correspondence dated July 21, 2017 is attached as an exhibit to the Complaint and appears to be from Thomas Morton and addressed to Andrew Schaap, Aligned's CEO.  Aligned denies the remaining allegations of paragraph 35 of the Complaint.

36.     Aligned denies the allegations of paragraph 36 of the Complaint.

37.     Aligned admits that a correspondence dated July 27, 2017 is attached as an exhibit to the Complaint and is addressed to Jakob Carnemark, Aligned's CTO.  Aligned denies the remaining allegations contained in paragraph 37 of the Complaint.

38.     Aligned admits that a correspondence dated August 2, 2017 is attached as an exhibit to the Complaint.  Aligned denies the remaining allegations of paragraph 38 of the Complaint.

39.     Aligned admits that the correspondence dated August 2, 2017, which is attached as an exhibit to the Complaint, states, in part, that "Aligned has recently learned that Switch has been communicating with Aligned's potential customers and with data center brokers, including third parties in San Francisco, CA, and asserting that Aligned infringes Switch patents."  Aligned admits that Switch should be required to issue corrective statements regarding its false assertions, and admits that Switch has not done so.  Aligned denies the remaining allegations of paragraph 39.

40.     Aligned denies the allegation of paragraph 40 of the Complaint.

### III.     Aligned's Data Centers

41.     Aligned admits that its affiliates have data center facilities in Plano, Texas and Phoenix, Arizona.  Aligned denies the characterization in paragraph 41 of the Complaint regarding those data centers and the manner in which Aligned and its affiliates build facilities. Aligned is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 41 of the Complaint, and therefore denies them.

42.     Aligned denies the allegations in paragraph 42 of the Complaint.

43.     Aligned denies the allegations in paragraph 43 of the Complaint and specifically denies that it has committed any acts of infringement.

44.     Aligned admits that at around 2:23 to 2:29 of the video found at, https://www.youtube.com/watch?v=fvlMKfZU9OI, the audio states ". . . if there is new technology that will improve efficiency, or lower the cost to operate our data centers, we will embrace it wholeheartedly."  Aligned denies the remaining allegations of paragraph 44 of the Complaint, and specifically denies that it has committed any acts of infringement.

### IV. Stephen Fairfax

45.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint, and therefore denies them.

46.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 of the Complaint, and therefore denies them.

47.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 of the Complaint, and therefore denies them.

48.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 of the Complaint, and therefore denies them.

49.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint, and therefore denies them.

50.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint, and therefore denies them.

51.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint, and therefore denies them.

52.     Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint, and therefore denies them.

### V. Relationship between Aligned Data Centers and Stephen Fairfax

53.     Aligned admits that Mr. Fairfax reviewed and discussed Aligned's data center reliability and that at around 1:09 to 1:13 of the video embedded at https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers, the audio states, ". . . Aligned was unique in that they approached us while the paper was literally still blank."  Aligned denies the remaining allegations in paragraph 53 of the Complaint.

54.     Aligned admits that Mr. Fairfax reviewed and discussed Aligned's data center reliability.  Aligned denies the remaining allegations in paragraph 54 of the Complaint and specifically denies that Mr. Fairfax has or had any participation in developing Aligned's data center cooling technology, designs or execution.

## VI.     Aligned Data Center Design

55.     Aligned is without information sufficient to form a belief as to the truth of the allegations regarding Switch's belief as set forth in paragraph 55 of the Complaint, and therefore denies them.  Aligned denies any remaining allegations of paragraph 55 of the Complaint, and specifically denies that it has committed any acts of infringement.

56.     Aligned denies the allegations in paragraph 56 of the Complaint and specifically denies that it has committed any acts of infringement.

## COUNT ONE:  DIRECT INFRINGEMENT BY ALIGNED DATA CENTERS LLC

57.     Aligned denies the allegations in paragraph 57 of the Complaint, and specifically denies that it has committed any acts of infringement.

58.     Aligned specifically denies that it has committed any acts of infringement.  Aligned admits that paragraph 58 of the Complaint cites to claim 1 of the '780 patent, which states:

> 1.  An apparatus for maintaining a configuration of electronic equipment disposed in a plurality of cabinets, for supporting a thermal shield that defines a hot air containment chamber, and supporting distribution power wires and conduits, electronic equipment power wires and conduits, and communication wiring, the plurality of cabinets disposed on a floor, the floor being within an internal area of a building, the cabinets positioned in a two rows and separated by a hot aisle area so that the electronic equipment disposed in the plurality of cabinets emit heated air in a predetermined direction toward the hot aisle area between the two rows, the apparatus comprising:
>
>> a plurality of support brackets disposed along each of the two rows that support the distribution power wires and conduits, the electronic equipment power wires and conduits, and the communication wiring on one side of the plurality of support brackets, and support the thermal shield on another side plurality of support brackets, wherein a portion of each of the support brackets is adapted for connection above the plurality of cabinets, each of the support brackets including, in the portion adapted for connection above the plurality of cabinets:
>>
>> a plurality of tiered ladder rack supports on the one side to establish a plurality of different tiers outside of the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring, and
>>
>> a plurality of conduit holders disposed on the one side above the plurality of tiered ladder rack supports, each of the conduit holders in each of the plurality of support brackets aligned with corresponding ones of conduit holders in the other

plurality of support brackets, for holding a plurality of the distribution power wires and conduits.

59. Aligned denies the allegations in paragraph 59 of the Complaint, and specifically denies that it has committed any acts of infringement.

60. Aligned specifically denies that it has committed any acts of infringement. Aligned admits that paragraph 60 of the Complaint cites to claim 1 of the '389 patent, which states:

1. An apparatus for maintaining a configuration of electronic equipment disposed in a plurality of cabinets, for supporting a thermal shield that defines a hot air containment chamber, for supporting a thermal barrier ceiling, for supporting cool air ductwork and for supporting distribution power wires and conduits, electronic equipment power wires and conduits, and communication wiring, the plurality of cabinets disposed on a floor, the floor being within an internal area of a building, the cabinets positioned into two parallel rows that are separated by a hot aisle area so that the electronic equipment disposed in the plurality of cabinets emit heated air in a predetermined direction toward the hot aisle area between the two rows, the apparatus comprising:

an interior frame structure that is independent of and not structurally tied to the plurality of cabinets, the interior frame structure including:

a first plurality of vertical support brackets disposed only at ends of the two rows, each vertical support bracket being disposed on the floor at one end and assists in supporting the thermal barrier ceiling at another end, wherein the first plurality of vertical support brackets each further support portions of the thermal shield on one side of the first plurality of vertical support brackets at a location above a top of the plurality of cabinets, wherein the cabinets positioned in the two parallel rows are separated by the hot aisle area, and wherein a cross sectional area of the hot air containment chamber defined by the thermal shield and parallel with the floor is disposed directly above and encompasses a cross sectional area of the hot aisle area that is located between the two parallel rows of cabinets and is parallel with the floor;

a first horizontal support bracket disposed above a cabinet height that intersects a middle hot aisle portion so that an area on two opposite sides of each hot aisle where the cabinets can be placed does not have any vertical support brackets disposed therein;

a second plurality of horizontal support brackets that are each parallel with the floor, each of the second plurality of horizontal support brackets connecting together two different ones of the first plurality of vertical support brackets and connecting to each of the two different ones of the first plurality of vertical support brackets at a height that is above the cabinet height;

a plurality of tiered ladder rack supports, each connected to another side of at least some of the first plurality of vertical support brackets that is opposite the one side,

which establish a plurality of different tiers outside of the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring;

and a second plurality of vertical support brackets disposed in a row, substantially parallel to the two rows, each second vertical support bracket being disposed on the floor at one end and assists in supporting the thermal barrier ceiling at another end, wherein the second plurality of vertical support brackets each further support portions of the cool air ductwork.

61.    Aligned denies the allegations in paragraph 61 of the Complaint, and specifically denies that it has committed any acts of infringement.

62.    Aligned specifically denies that it has committed any acts of infringement. Aligned admits that paragraph 62 of the Complaint cites to claim 1 of the '495 patent, which states:

1. An apparatus for cooling electronic equipment contained within a floor of a building, in conjunction with a plurality of air conditioning units that each create cool air and include an exhaust fan and a cooling fan and a plurality of actuators that control a plurality of dampers associated with the plurality of air conditioning units, the apparatus comprising:

a plurality of cabinets disposed on the floor of the building for holding the electronic equipment therein, the plurality of cabinets positioned in a plurality of rows within each of a plurality of cabinet clusters so that the electronic equipment disposed within the cabinets emit heated air from the cabinets in each row of each cabinet cluster toward a central hot air area associated with each cabinet cluster;

a hot air containment chamber disposed within the building over each of the plurality of cabinet clusters that traps the heated air within the central hot air area and causes substantially all the heated air within the central hot air area to rise up within the hot air containment chamber and exit through a hot air escape opening of the associated hot air containment chamber;

a warm air escape gap disposed within the building and disposed above each of the hot air containment chambers, the warm air escape gap collecting the heated air from each of the hot air containment chambers and feeding the heated air to the air conditioning units, the warm air escape gap being lowerly bounded by a ceiling, wherein the ceiling contains ceiling openings that each align with one of the hot air escape openings in each of the hot air containment chambers;

cool air ducts disposed within the building that deliver the cool air from the plurality of air conditioning units toward a periphery of the plurality of rows of cabinets within each of the plurality of cabinet clusters; and

a control system, the control system comprising:

a plurality of temperature sensors, at least one temperature sensor located inside each of the central hot air areas associated with each cabinet cluster, at least one temperature sensor located outside each of the plurality of cabinet clusters, and at least one temperature sensor located in the warm air escape gap;

a plurality of pressure differential sensors, at least one pressure differential sensor located inside each of the plurality of hot air containment chambers, at least one pressure differential sensor located outside each of the plurality of hot air containment chambers, and at least one pressure differential sensor located in the warm air escape gap; and

a computer system, the computer system receiving signals from each of the plurality of temperature sensors and each of the plurality of pressure differential sensors, and providing control signals to control the exhaust fan, the cooling fan, and the plurality of actuators in order to control the temperature of the cooled air and a pressure differential that exists between an area within the hot air containment chamber for each of the cabinet clusters and a different area outside of each of the cabinet clusters.

63.     Aligned denies the allegations in paragraph 63 of the Complaint, and specifically denies that it has committed any acts of infringement.

64.     Aligned denies the allegations in paragraph 64 of the Complaint, and specifically denies that it has committed any acts of infringement.

65.     Aligned admits making the statements quoted in paragraph 65 of the Complaint, but specifically denies that it has committed any acts of infringement.

66.     Aligned admits making the statements quoted in paragraph 66 of the Complaint, but specifically denies that it has committed any acts of infringement.

67.     Aligned admits making the statements quoted in paragraph 67 of the Complaint, but specifically denies that it has committed any acts of infringement.

## COUNT TWO:  INDIRECT INFRINGEMENT BY ALIGNED

68.     In response to paragraph 68 of the Complaint, Aligned incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

69.     Aligned admits that it was first provided notice of the '780 patent and the '389 patent via a correspondence from Thomas Morton at Switch, dated July 21, 2017.  Aligned admits that it had notice of the '495 patent as of the Complaint.  Aligned denies the remaining

allegations in paragraph 69 of the Complaint, and specifically denies that it has committed any acts of infringement.

70.    Aligned admits the correspondence from Thomas Morton at Switch, dated July 21, 2017, identifies the '780 patent and the '389 patent.  Aligned is without information sufficient to form a belief as to the truth of the allegations regarding the remaining allegations in paragraph 70 of the Complaint, and therefore denies them.

71.    Aligned denies the allegations in paragraph 71 of the Complaint, and specifically denies that it has committed any acts of infringement.

72.    Aligned denies the allegations in paragraph 72 of the Complaint, and specifically denies that it has committed any acts of infringement.

73.    Aligned denies the allegations in paragraph 73 of the Complaint, and specifically denies that it has committed any acts of infringement.

74.    Aligned denies the allegations in paragraph 74 of the Complaint, and specifically denies that it has committed any acts of infringement.

## COUNT THREE:  INDIRECT INFRINGEMENT BY MTECHNOLOGY

75.    In response to paragraph 75 of the Complaint, Aligned incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

76.    Aligned denies the allegations contained in paragraph 76 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 76 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint.

77.    Aligned denies the allegations contained in paragraph 77 of the Complaint to the extent and as they relate to Aligned.  To the extent the allegations in paragraph 77 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 of the Complaint.

78.     Aligned denies the allegations contained in paragraph 78 of the Complaint to the extent and as they relate to Aligned. To the extent the allegations in paragraph 78 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the Complaint.

79.     Aligned denies the allegations contained in paragraph 79 of the Complaint to the extent and as they relate to Aligned. To the extent the allegations in paragraph 79 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79 of the Complaint.

80.     Aligned denies the allegations contained in paragraph 80 of the Complaint to the extent and as they relate to Aligned. To the extent the allegations in paragraph 80 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 of the Complaint.

81.     Aligned denies the allegations contained in paragraph 81 of the Complaint to the extent and as they relate to Aligned and any allegation that Mr. Fairfax has or had any participation in developing Aligned's data center cooling technology, designs or execution. Moreover, Aligned specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 81 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 of the Complaint.

82.     Aligned denies the allegations contained in paragraph 82 of the Complaint to the extent and as they relate to Aligned. Moreover, Aligned specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 82 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint.

83.     Aligned denies the allegations contained in paragraph 83 of the Complaint to the extent and as they relate to Aligned. Moreover, Aligned specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 83 of the Complaint are

directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint.

84.     Aligned denies the allegations contained in paragraph 84 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 84 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84 of the Complaint.

85.     Aligned denies the allegations contained in paragraph 85 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 85 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85 of the Complaint.

86.     Aligned denies the allegations contained in paragraph 86 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 86 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 of the Complaint.

87.     Aligned denies the allegations contained in paragraph 87 of the Complaint to the extent and as they relate to Aligned.  Moreover, Aligned specifically denies that it has committed any acts of infringement.  To the extent the allegations in paragraph 87 of the Complaint are directed to MTechnology, Aligned is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 87 of the Complaint.

## DEMAND FOR JURY TRIAL

The Complaint does not contain any allegations to admit or deny with respect to Switch's request for a trial by jury of any issues so triable by right.  Aligned demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

These paragraphs set forth the statement of relief requested by Switch to which no response is required. Aligned denies that Switch is entitled to any of the requested relief and denies any allegations therein.

## **AFFIRMATIVE DEFENSES**

Aligned alleges and asserts the following defenses, affirmative or otherwise, without assuming any burden of proof that it would not otherwise have. In addition to the affirmative defenses described below and subject to its responses above, Aligned specifically reserves all rights to allege additional defenses, affirmative or otherwise, that become known through the course of discovery.

### **FIRST AFFIRMATIVE DEFENSE**

### **FAILURE TO STATE A CLAIM**

The Complaint fails to state a claim upon which relief can be granted because, *inter alia*, the Complaint does not plausibly state a claim of infringement for which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

### **NON-INFRINGEMENT**

For at least the reasons set forth in response to Count One of the Complaint, Aligned does not infringe and has not infringed (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the Patents-In-Suit.

### **THIRD AFFIRMATIVE DEFENSE**

### **INVALIDITY**

The claims of the Patents-In-Suit are invalid under 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112. Aligned reserves the right to identify and rely upon prior art that may be discovered as discovery progresses in this action.

## FOURTH AFFIRMATIVE DEFENSE

## BAR TO DAMAGES

Switch's claims for damages are barred, in whole or in part, under 35 U.S.C. §§ 287 and/or 288.

## FIFTH AFFIRMATIVE DEFENSE

## NO INJUNCTIVE RELIEF

Switch's claim for injunctive relief is barred because any alleged injury to Switch is not immediate or irreparable, and Switch has an adequate remedy at law for any alleged injury.

## RESERVATION OF DEFENSES

Aligned reserves all affirmative defenses under Federal Rule of Civil Procedure 8(c), the patent laws, and any other defenses available at law or in equity that now exist or in the future may be available based on discovery or any other factual investigation concerning this action.

## COUNTERCLAIMS

Counterclaim-plaintiffs Aligned Data Centers, LLC ("Aligned Data Centers"); Aligned Data Centers (DFW), LLC ("ADC DFW") and Aligned Data Centers (Phoenix), LLC ("ADC Phoenix") (collectively, "Aligned") hereby plead the following counterclaims against Counterclaim-defendant Switch, Ltd. ("Switch"), and alleges as follows:

### THE PARTIES

1.      Aligned Data Centers is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 60 Backus Ave., Danbury, CT 06810.

2.      ADC Phoenix is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 2500 West Union Hills Drive, Phoenix, Arizona 85027.

3.      ADC DFW is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 2800 Summit Ave., Plano, TX 75074.

4.      Switch is a limited liability company organized and existing under the laws of the State of Nevada with a principal place of business located at 7135 South Decatur Boulevard, Las Vegas, Nevada 89118.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and the Patent Act of the United States, 35 U.S.C. §§ 1 et seq.  Aligned seeks a declaration from this Court that its business, its data centers, and the technology, methods, processes, and apparatuses deployed therein do not infringe any valid claim of U.S. Patent Nos. 8,072,780 ("'780 patent"), 8,180,495 ("'495 patent"), and 9,622,389 ("'389 patent") (collectively, "Patents-In-Suit").  Aligned further seeks a declaration from this Court that the Patents-in-Suit are invalid.

6.      This Court also has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. § 1331 because this action arises under the Lanham Act, 15 U.S.C. §§ 1051 et seq.  Aligned alleges that Switch's communications with a potential Aligned customer that is based in California and Switch's communications to others prior to filing this suit constitute unfair competition under applicable federal law.

7.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Aligned's claims for relief under Texas state law.

8.      This Court has personal jurisdiction over Switch as a result of Switch having filed its claims in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) as a result of Switch having filed its claims in this district.

## GENERAL ALLEGATIONS

### Background

10.     Aligned, together with its affiliated entities, is an industry-recognized leading developer of differentiated technology and a provider of data centers and data center services.  It has 60 U.S. and foreign patents and pending patent applications for its mechanical, electrical and design innovations.  Its foundational cooling technology patent applications were accepted into the USPTO's selective "Green Technology Pilot Program" for accelerated review and several patents were issued in 2012 under that program.  Recently, it received an Edison Award in 2016 and has been independently evaluated by MTechnology as the most reliable it has ever assessed.  Numerous engineering firms have recognized the novelty of its cooling technology.  (*See, e.g.*, Norman Disney Young Report on the Inertech system, dated December 13, 2012.)

11.     Switch is also a provider of data centers and data center services.

12.     Aligned and Switch are competitors in the field of data center services and, as a result, compete for many of the same customers.

13.     Prior to initiation of this suit, Aligned and, on information and belief, Switch were seeking to execute a contract to provide data center services to a third-party customer located in San Francisco, California (the "California customer").

## The Patents-In-Suit

14.     The '780 patent is entitled, "Integrated Wiring System and Thermal Shield Support Apparatus for a Data Center," was filed on March 30, 2009, and issued on December 6, 2011.  The abstract of the '780 patent states, "Described herein is an integrated data center that provides for efficient cooling, as well as efficient wire routing, and in particular a support for a thermal shield, distribution wiring, as well as cabinet cluster wiring."  The figure on the face of the '780 patent is as follows:



15.     The '389 patent is entitled, "Electronic Equipment Data Center and Server Co-location Facility Configurations and Method of Using the Same," was filed on March 18, 2014, and issued on April 11, 2017.  The abstract of the '389 patent states, "Described herein is an integrated data center that provides for efficient cooling, as well as efficient wire routing, and in particular a configuration in which electronic equipment cabinets are arranged in rows within thermal compartments where the cabinets may be rolled in and out of place as required and a frame supports thermal shields of the thermal compartment."  The figure on the face of the '389 patent is as follows:



16. The '495 patent is entitled, "Air Handling Control System for a Data Center," was filed on March 30, 2009, and issued on May 15, 2012. The abstract of the '495 patent states, "Described herein is an integrated data center that provides for efficient cooling, as well as efficient wire routing, and in particular a control system for controlling the temperature and pressure within the data center." The figure on the face of the '495 patent is as follows:



17. As acknowledged in the specification of the Patents-In-Suit, a well-known aspect to the design of data center facilities is "to have the electronic equipment placed into rows, and

further to have parallel rows of equipment configured back-to back so that each row of equipment generally forces the heat from the electronic equipment toward a similar area, known as a hot aisle, as that aisle generally contains warmer air that results from the forced heat from the electronics equipment.   In front of the equipment is thus established a cold aisle." (D.I. 1-1 ('780 patent) at col. 1:49-57; D.I. 1-2 ('495 patent) at col. 1:47-55; D.I. 1-3 ('389 patent) at col. 1:53-61.)   One of the elements the Patents-In-Suit describes and claims as a point of novelty in its system is the use of a thermal shield that defines a hot air containment chamber for compartmentalizing server heat in the hot aisle.  (*See generally* D.I. 1-1, 1-2, 1-3.)  Yet, such shields and chambers have existed in the prior art well before the priority dates of the Patents-In-Suit.

18.     For example, upon information and belief, "Hot Aisle Containment Systems" have been publicly disclosed since at least 2003.  (*See* U.S. Patent No. 6,859,366 (Fink).) Companies such as APC have used such systems and ducted air cooling systems that Switch's technology appears derivative of since at least 2006.  (*See* J. Niemann, APC Application Note #92:  Best Practices for Designing Data Centers with InfraStruXure InRow RC (2006).)  Such hot aisle containment systems can be added to the hot aisle to improve the predictability of its cooling systems, reduce the opportunity for hot air to mix with the room, and improve the sphere of influence of its cooling systems.  (*Id.* at 6.)  APC's hot aisle containment system is made up of roof panels and door kits disposed between two rows of servers for thermal compartmentalization of the heat generated in the hot aisle.  (*Id*. at 6-7.)

19.     In order to ensure that there is adequate cooling capacity for the containment system, APC publishes best practices and factors to consider in designing a solution with hot aisle containment.  (*Id.*)  APC further explains, "The Hot Aisle Containment System" encloses an aisle to collect and cool equipment exhaust, making it available for cool air intakes.  This creates a self-contained system capable of supporting high power density loads." (*See* APC Hot Aisle Containment System, Installation Guide (2005) at 3.)

20.     Beyond the general prior art idea of hot air in aisles of computer equipment, Switch's patent claims at issue are directed to tiered configurations for brackets and rack supports – *i.e.*, the physical mounting for components and wiring racks.  An example of the claimed tiered rack supports is shown in Figure 6A of the '780 and '495 patents:



FIG. 6A

(*See, e.g.*, D.I. 1-1, Fig 6A, claim 1; D.I. 1-2, Fig. 6A.)  Setting up tiers for electronic components or wiring is not novel, inventive, non-obvious or patentably distinct.  Nor is using brackets to support tiers, or using cable trays to support cables, and further evidentiary support for the non-novel and obvious nature of the asserted claims is likely to be identified after a reasonable opportunity for further investigation and discovery.

### Switch's Accusations Against Aligned

21.     On July 21, 2017, Switch sent a letter to Aligned's Chief Executive Officer, Mr. Andrew Schaap.  (D.I. 1-4.)

22.     Switch's letter purported to be "curious" about the "customer pod" designs in Aligned's data centers.  Switch admitted that it did not have a basis to claim infringement regarding Aligned's proprietary technology, instead stating that it had a "need to evaluate ***whether*** Aligned Data Center's current facilities or advertised prototypes ***may*** read on Switch's patents," noting that it had "***questions as to what extent***" there might be any similarity between the competing technologies.

23.     Switch's letter was carefully worded to avoid any accusation or allegation—either express or implied—of patent infringement.  Instead, Switch's letter merely asserts Switch's ownership of the Patents-In-Suit, expresses only a curiosity about the makeup of the "customer pod" designs, requests more information from Aligned regarding Aligned's data centers and "customer pod" designs, and admits to the need to still evaluate Aligned's current facilities to investigate potential unauthorized practice of Switch's patents.  (*See id.*)

24.     Switch's letter invited Mr. Schaap to contact Switch's president, Mr. Thomas Morton, "to avoid error and build a positive relationship."  (*Id.*)  Switch closes its letter "in the spirit of openness and hope for an expedient and amicable resolution."  (*Id.*)

### Switch's Interference With Aligned's Business

25.     Switch's letter was, at best, a purposeful misdirection.  At the same time that it sent a letter of 'curiosity' to Aligned that essentially admitted that it did not have a basis to claim infringement, on information and belief, Switch communicated with a potential customer for whom both Aligned and Switch were vigorously competing, and represented to the customer that Aligned was infringing Switch's patents.  On information and belief, Switch made this representation to the customer, for which it admitted to Aligned that it did not have a basis, for the purpose of seeking to prevent the customer from awarding the pending contract to Aligned instead of Switch.

26.     On information and belief, Switch has repeated its assertions of patent infringement regarding Aligned that Switch admitted it did not have a basis for to other industry participants, seeking to harm Aligned's reputation in the industry and harm Aligned's ability to compete with Switch for business.

27.     Switch admittedly published these statements without adequate knowledge of or investigation into whether or not Aligned's products and services actually infringed any of the Patents-In-Suit.

28.     On information and belief, Switch undertook this conduct with respect to the California customer with the intent to unfairly influence the competition between Aligned and

Switch for the California customer's business and not in an attempt to enforce or assert any rights that Switch may or may not have in the Patents-In-Suit.

29.     On or about July 27, 2017, the California customer notified Aligned of Switch's communications regarding Aligned's alleged infringement of the Patents-In-Suit. This negatively affected Aligned's business prospects with respect to the California customer.

30.     On August 2, 2017, Aligned's outside counsel sent a letter to Switch in response to Switch's July 21 letter, informing Switch that Aligned did not infringe any of the Patents-In-Suit and providing specific examples of non-infringement. (*See* D.I. 1-6.)

31.     Aligned's August 2nd letter further informed Switch that Aligned was aware of the patent infringement accusations Switch made to the California customer and demanded that Switch cease and desist from making such statements due to the direct harm those statements have on Aligned's current and future economic opportunity

32.     Switch did not reply to the August 2nd letter from Aligned's outside counsel.

33.     Instead, five days later, on August 7, 2017, Switch filed the instant suit against Aligned in this Court alleging infringement of the Patents-In-Suit.

34.     On information and belief, Switch appears to have filed the instant action in an effort to shield itself from liability after the fact for its wrongful conduct against Aligned involving at least the California customer.

## COUNT I

### (Declaratory Judgment Of Non-Infringement Of The '780 Patent)

35.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-34 above as if fully set forth herein.

36.     Aligned does not infringe and has not infringement (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the '780 patent.

37.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '780 patent.

38.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

39.     The Complaint alleges that Aligned infringes claim 1 of the '780 patent.  Claim 1 is the only independent claim of the '780 patent and recites:

> 1.  An apparatus for maintaining a configuration of electronic equipment disposed in a plurality of cabinets, for supporting a thermal shield that defines a hot air containment chamber, and supporting distribution power wires and conduits, electronic equipment power wires and conduits, and communication wiring, the plurality of cabinets disposed on a floor, the floor being within an internal area of a building, the cabinets positioned in a two rows and separated by a hot aisle area so that the electronic equipment disposed in the plurality of cabinets emit heated air in a predetermined direction toward the hot aisle area between the two rows, the apparatus comprising:
>
>> a plurality of support brackets disposed along each of the two rows that support the distribution power wires and conduits, the electronic equipment power wires and conduits, and the communication wiring on one side of the plurality of support brackets, and support the thermal shield on another side plurality of support brackets, wherein a portion of each of the support brackets is adapted for connection above the plurality of cabinets, each of the support brackets including, in the portion adapted for connection above the plurality of cabinets:
>>
>> a plurality of tiered ladder rack supports on the one side to establish a plurality of different tiers outside of the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring, and
>>
>> a plurality of conduit holders disposed on the one side above the plurality of tiered ladder rack supports, each of the conduit holders in each of the plurality of support brackets aligned with corresponding ones of conduit holders in the other plurality of support brackets, for holding a plurality of the distribution power wires and conduits.

40.     In the Complaint, Switch sets forth only a single paragraph as its statement of alleged infringement of the '780 patent entitling it to relief.  (D.I. 1, ¶ 59.)  In that paragraph, Switch shows only two pictures of Aligned's system and then alleges that Aligned data centers contain "an apparatus with "support brackets," "cabinets," a thermal shield," "tiered ladder racks supports," and "conduit holders" as claimed in the '780 patent."  (D.I. 1, ¶ 59.)

41.     The plain language of claim 1 (reproduced above in paragraph 39), however, requires significantly more than the mere existence of those components in an accused system.

In fact, even assuming that all those components existed in Aligned systems – which they do not – that alone is insufficient to prove infringement of each and every limitation set forth in claim 1 of the '780 patent.

42. Switch's Complaint fails to set forth a basis for its claim of infringement – it merely parrots certain specific structures listed in claim 1 that Switch does not and cannot claim that it invented. Switch's lack of a basis to claim infringement is confirmed by its July 21, 2017 correspondence to Aligned identifying the '780 patent, wherein Switch admittedly lacked sufficient information to allege infringement and specifically avoided making any allegation that Aligned infringed a Switch patent. (*See* D.I. 1-4.)

43. The Aligned systems operate and are designed using innovative technologies, particularly for efficiently removing server heat, that are entirely distinct from that which is embodied in the '780 patent. And, as clearly shown in the cited pictures in Switch's Complaint and as explained below, Switch is, or should have been aware, that Aligned systems do not contain at least the components called out in paragraph 59 of the Complaint in the manner and orientation required for the apparatus of claim 1 of the '780 patent. Switch's claim of infringement in the Complaint that relies on evidence that undisputedly establishes non-infringement is groundless, and is evidence of a lack of good faith.

44. Because claim 1 is the sole independent claim of the '780 patent, if Aligned does not meet even a single limitation of claim 1, it cannot infringe claim 1 and cannot infringe any of the remaining claims in the '780 patent.

45. Aligned does not infringe claim 1 (or any other claim) of the '780 patent. As one example of why Switch's claim of infringement of the '780 patent cannot be correct, claim 1 of the '780 patent requires "support brackets disposed along each of the two rows that support distribution power wires and conduits, the electronic equipment power wires and conduits, and the communication wiring on one side of the plurality of support brackets, and support the thermal shield on another side [of the] plurality of support brackets."

46. However, as clearly illustrated in the very images that Switch submitted with its Complaint, there are no such support brackets as required by the claim. First, as the images depict, the communication wiring exists on a single layer IT cable tray on the outside of the polycarbonate hard windows and the tray itself is suspended using support bars attached to the building ceiling grid Aligned installs. The support bars could not possibly support any "thermal shield" as required by the claim, since they are only attached to the tray. Nor do the support bars support any electronic power wiring as required by the claim since, as clearly depicted in the pictures Switch submits, power is supplied through a system such as a Starline® Track Busway system (first introduced in 1987) that runs down the inside of the aisle (and, as depicted, on the opposite side of the polycarbonate windows and nowhere near the cable trays or their support bars). Because the single tray support bars only support the IT cable tray, they do not and cannot support anything on "another side," as claim 1 requires. Nor is there a thermal shield as claimed in the '780 patent. Switch's own submitted evidence establishes that Aligned's depicted system cannot meet the asserted claim.



*See, e.g.,* Complaint, ¶ 61
(citing http://www.datacenterdynamics.com/content-tracks/colo-cloud/aligned-plano-power-andcooling-on-demand/97039.fullarticle)



*See, e.g.,* Complaint, ¶ 61
(citing video at https://www.youtube.com/watch?v=q2nXSUi7Ag8)

47. The above is not the only reason that Switch's claim of infringement is objectively baseless. The depicted Aligned system also, and independently, does not contain the "plurality of tiered ladder rack supports on the one side to establish a plurality of different tiers outside of the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring," as also required by claim 1 of the '780 patent.

48. As clearly illustrated in the images in paragraph 46 above, which are the images that Switch submitted in its Complaint, there is only a single IT cable tray (on each side of the hot aisle row) that is suspended and kept in place by support bars attached to the building ceiling grid system. The trays themselves, which support only network communication wiring, are not "ladder rack" supports, nor are they "tiered." Furthermore, the depicted Aligned system runs its power wires and conduits *through* the hot aisle via busways, not along the outside of the hot aisle together with the communication wiring, as claim 1 requires.

49. Additionally, the Aligned system does not contain "a plurality of conduit holders disposed on the one side above the plurality of tiered ladder rack supports, each of the conduit

holders in each of the plurality of support brackets aligned with corresponding ones of conduit holders in the other plurality of support brackets, for holding a plurality of the distribution power wires and conduits", as recited in claim 1 of the '780 patent.

50.     As shown below in the images from a video clip cited in the Complaint as evidence of alleged infringement, the Aligned system runs the server power lines and their conduits through the hot aisle.  Claim 1, however, requires that such conduit holders be on the same side as (and above) the support structure for the communication wiring.  And, according to the claim, the support structure is required to be on the outside of the claimed "hot air containment chamber."



See, e.g., Complaint, ¶ 61
(citing video at https://www.youtube.com/watch?v=q2nXSUi7Ag8)

51.     Switch's claim of infringement of claim 1 of the '780 Patent is demonstrably incorrect based on the very images and documents that Switch itself submitted in its Complaint. Because, under prevailing law, Switch's basis for its claim of infringement is required to be set forth in the Complaint, the Complaint is evidence that Switch does not have a good faith basis to

claim infringement, and did not have a good faith basis to represent to Aligned's prospective customer that Aligned infringes any Switch patents. Aligned seeks a declaration that it does not infringe and has not infringed (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the '780 patent.

## COUNT II

### (Declaratory Judgment Of Invalidity Of The '780 Patent)

52.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-51 above as if fully set forth herein.

53.     The claims of the Patent-in-Suit are invalid under 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112. Aligned reserves the right to identify and rely upon prior art that may be discovered as discovery progresses in this action.

54.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '780 patent.

55.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

56.     Aligned therefore seeks a declaration that the '780 patent is invalid for failing to comply with one or more of the requirements set forth in 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT III

### (Declaratory Judgement of Non-Infringement Of The '389 Patent)

57.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-56 above as if fully set forth herein.

58.     Aligned does not infringe and has not infringement (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the '389 patent.

59.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '389 patent.

60.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

61.     The Complaint alleges that Aligned infringes claim 1 of the '389 patent. Claim 1 recites:

> 1. An apparatus for maintaining a configuration of electronic equipment disposed in a plurality of cabinets, for supporting a thermal shield that defines a hot air containment chamber, for supporting a thermal barrier ceiling, for supporting cool air ductwork and for supporting distribution power wires and conduits, electronic equipment power wires and conduits, and communication wiring, the plurality of cabinets disposed on a floor, the floor being within an internal area of a building, the cabinets positioned into two parallel rows that are separated by a hot aisle area so that the electronic equipment disposed in the plurality of cabinets emit heated air in a predetermined direction toward the hot aisle area between the two rows, the apparatus comprising:
>
>> an interior frame structure that is independent of and not structurally tied to the plurality of cabinets, the interior frame structure including:
>>
>> a first plurality of vertical support brackets disposed only at ends of the two rows, each vertical support bracket being disposed on the floor at one end and assists in supporting the thermal barrier ceiling at another end, wherein the first plurality of vertical support brackets each further support portions of the thermal shield on one side of the first plurality of vertical support brackets at a location above a top of the plurality of cabinets, wherein the cabinets positioned in the two parallel rows are separated by the hot aisle area, and wherein a cross sectional area of the hot air containment chamber defined by the thermal shield and parallel with the floor is disposed directly above and encompasses a cross sectional area of the hot aisle area that is located between the two parallel rows of cabinets and is parallel with the floor;
>>
>> a first horizontal support bracket disposed above a cabinet height that intersects a middle hot aisle portion so that an area on two opposite sides of each hot aisle where the cabinets can be placed does not have any vertical support brackets disposed therein;
>>
>> a second plurality of horizontal support brackets that are each parallel with the floor, each of the second plurality of horizontal support brackets connecting together two different ones of the first plurality of vertical support brackets and connecting to each of the two different ones of the first plurality of vertical support brackets at a height that is above the cabinet height;
>>
>> a plurality of tiered ladder rack supports, each connected to another side of at least some of the first plurality of vertical support brackets that is opposite the one side, which establish a plurality of different tiers outside of the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring;

and a second plurality of vertical support brackets disposed in a row, substantially parallel to the two rows, each second vertical support bracket being disposed on the floor at one end and assists in supporting the thermal barrier ceiling at another end, wherein the second plurality of vertical support brackets each further support portions of the cool air ductwork.

62.      In the Complaint, Switch sets forth only a single paragraph as its statement of alleged infringement of the '389 patent entitling it to relief.  (D.I. 1, ¶ 61.)  In that paragraph, Switch shows only two still pictures from videos of Aligned's system and then alleges that Aligned data centers contain "an apparatus with "vertical support brackets," "horizontal support brackets," "tiered ladder rack supports," a "thermal barrier ceiling" and "thermal shield" as claimed in the '389 patent."  (D.I. 1, ¶ 61.)

63.      The plain language of claim 1 (reproduced above in paragraph 61), however, requires significantly more than the mere existence of those components in an accused system. In fact, even assuming that all those components existed in Aligned systems – which they do not – that alone is insufficient to prove infringement of each and every limitation set forth in claim 1 of the '389 patent.

64.      Switch's Complaint fails to set forth a basis for its claim of infringement – it merely parrots certain specific structures listed in claim 1 that Switch does not and cannot claim that it invented.  Switch's lack of a basis to claim infringement is confirmed by its July 21, 2017 correspondence to Aligned identifying the '389 patent, wherein Switch admittedly lacked sufficient information to allege infringement and specifically avoided making any allegation that Aligned infringed and Switch patent.  (*See* D.I. 1-4.)

65.      The Aligned systems operate and are designed using innovative technologies, particularly for high efficiency cooling of data center servers, that are entirely distinct from that which is embodied in the '389 patent.  And, as clearly shown in the pictures cited in Switch's Complaint and as explained below, Switch is, or should have been aware, that Aligned systems do not contain at least the components called out in paragraph 61 of the Complaint in the manner and orientation required for the apparatus of claim 1 of the '389 patent.  Switch's claim of

infringement in the Complaint that relies on evidence that undisputedly establishes non-infringement is groundless, and is evidence of a lack of good faith.

66. The '389 has two independent claims: claims 1 and 10. Claim 10 is a method claim that recites similar and many of the same limitations of the apparatus claimed in claim 1. For at least the same reasons explained below with respect to claim 1 of the '389 patent, Aligned systems do not infringe independent claim 10. And, if Aligned's systems do not meet even a single limitation of the two independent claims, they cannot infringe any of the remaining claims in the '389 patent.

67. Aligned does not infringe claim 1, or any other claim, of the '389 patent. For example, the Aligned system does not contain "a thermal shield that defines a hot air containment chamber" or "a thermal barrier ceiling", as recited in claim 1 of the '389 patent.

68. As shown in the following images, which Switch relies upon in its Complaint as evidence of alleged infringement, the Aligned system uses an innovative and unique patented system that does not utilize thermal shields that define a hot air containment chamber or a thermal barrier ceiling. Rather, the Aligned system uses a closed-loop distribution system that pumps refrigerant to the microchannel coils above each rack to remove heat directly at the rack level. In other words, the cooling system at the top of the hot aisle cannot be a thermal barrier ceiling as it functions to remove heat entirely at the server racks via refrigerant circulating through microchannel coils above the server racks. And, the polycarbonate hard containment windows are not thermal shields, nor do they function as thermal shields according to the '389 patent.



*See, e.g.,* Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=2YnPQ4KmMKU)



*See, e.g.,* Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=KCaPCc6eHpk)

69.     Moreover, the Aligned system does not contain "cool air ductwork" as recited in claim 1 of the '389 patent.  Rather, Aligned uses an innovative approach to remove heat directly at the source (*e.g.*, the server racks) by circulating refrigerant through microchannel coils placed directly above the server racks, rather than the less efficient method of removing heat by transporting hot and cold air through ducts and/or plenums in a duct distribution system.  This is a fundamental competitive difference between Aligned's novel solution and systems, such as Switch's, that rely on conventional techniques.

70.     As explained and shown in the images in paragraph 68 above, the Aligned system does not utilize cool air or cool air ducting to remove heat from the hot aisle.  Rather, as explained, the system uses refrigerant pumped to microchannel coils to directly remove heat between the server rows.  Indeed, at 1:22 to 1:29 of the video found at https://www.youtube.com/watch?v=KCaPCc6eHpk, which is cited in the Complaint, it is explained that, "rather than pushing cold air in," Aligned's "cooling system removes heat instead."

71.     Additionally, the Aligned system does not contain "a plurality of tiered ladder rack supports, each connected to another side of at least of the first plurality of vertical support brackets that is opposite the one side, which establish a plurality of different tiers outside the hot air containment chamber, so that each of the different tiers is adapted to hold the electronic equipment power wires and conduits and the communication wiring", as recited in claim 1 of the '389 patent.

72.     As shown below, there is only a single IT cable tray (on each side of the hot aisle row) that is suspended and kept in place by support bars attached to the building ceiling grid system.  The trays themselves, which support only network communication wiring, are neither multiple "ladder rack" supports connected to one side of vertical support brackets, nor are they "tiered."  Furthermore, the Aligned system runs its power wires and conduits *through* the hot aisle via busways, not along the outside of the hot aisle together with the communication wiring.



*See, e.g.*, Complaint, ¶ 61
(citing http://www.datacenterdynamics.com/content-tracks/colo-cloud/aligned-plano-power-andcooling-on-demand/97039.fullarticle)



*See, e.g.*, Complaint, ¶ 61
(citing video at https://www.youtube.com/watch?v=q2nXSUi7Ag8)



*See, e.g.*, Complaint, ¶ 61
(citing video at https://www.youtube.com/watch?v=q2nXSUi7Ag8)

73.     Switch's claim of infringement of claim 1 of the '389 Patent is demonstrably incorrect based on the very images and documents that Switch itself submitted in its Complaint. Because, under prevailing law, Switch's basis for its claim of infringement is required to be set forth in the Complaint, the Complaint is evidence that Switch does not have a good faith basis to claim infringement, and did not have a good faith basis to represent to Aligned's prospective customer that Aligned infringes any Switch patents. Aligned seeks a declaration that it does not infringe and has not infringed (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the '389 patent.

## COUNT IV

### (Declaratory Judgment Of Invalidity Of The '389 Patent)

74.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-73 above as if fully set forth herein.

75.     The claims of the Patent-in-Suit are invalid under 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.  Aligned reserves the right to identify and rely upon prior art that may be discovered as discovery progresses in this action.

76.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '389 patent.

77.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

78.     Aligned therefore seeks a declaration that the '389 patent is invalid for failing to comply with one or more of the requirements set forth in 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT V

### (Declaratory Judgement of Non-Infringement Of The '495 Patent)

79.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-78 above as if fully set forth herein.

80.     Aligned does not infringe and has not infringement (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim fo the '495 patent.

81.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '495 patent.

82.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

83.     The Complaint alleges that Aligned infringes claim 1 of the '495 patent.  Claim 1 recites:

> 1. An apparatus for cooling electronic equipment contained within a floor of a building, in conjunction with a plurality of air conditioning units that each create cool air and include an exhaust fan and a cooling fan and a plurality of actuators that control a plurality of dampers associated with the plurality of air conditioning units, the apparatus comprising:

a plurality of cabinets disposed on the floor of the building for holding the electronic equipment therein, the plurality of cabinets positioned in a plurality of rows within each of a plurality of cabinet clusters so that the electronic equipment disposed within the cabinets emit heated air from the cabinets in each row of each cabinet cluster toward a central hot air area associated with each cabinet cluster;

a hot air containment chamber disposed within the building over each of the plurality of cabinet clusters that traps the heated air within the central hot air area and causes substantially all the heated air within the central hot air area to rise up within the hot air containment chamber and exit through a hot air escape opening of the associated hot air containment chamber;

a warm air escape gap disposed within the building and disposed above each of the hot air containment chambers, the warm air escape gap collecting the heated air from each of the hot air containment chambers and feeding the heated air to the air conditioning units, the warm air escape gap being lowerly bounded by a ceiling, wherein the ceiling contains ceiling openings that each align with one of the hot air escape openings in each of the hot air containment chambers;

cool air ducts disposed within the building that deliver the cool air from the plurality of air conditioning units toward a periphery of the plurality of rows of cabinets within each of the plurality of cabinet clusters; and

a control system, the control system comprising:

> a plurality of temperature sensors, at least one temperature sensor located inside each of the central hot air areas associated with each cabinet cluster, at least one temperature sensor located outside each of the plurality of cabinet clusters, and at least one temperature sensor located in the warm air escape gap;

> a plurality of pressure differential sensors, at least one pressure differential sensor located inside each of the plurality of hot air containment chambers, at least one pressure differential sensor located outside each of the plurality of hot air containment chambers, and at least one pressure differential sensor located in the warm air escape gap; and

> a computer system, the computer system receiving signals from each of the plurality of temperature sensors and each of the plurality of pressure differential sensors, and providing control signals to control the exhaust fan, the cooling fan, and the plurality of actuators in order to control the temperature of the cooled air and a pressure differential that exists between an area within the hot air containment chamber for each of the cabinet clusters and a different area outside of each of the cabinet clusters.

84.     In the Complaint, Switch sets forth only a single paragraph as its statement of

alleged infringement of the '495 patent entitling it to relief.  (D.I. 1, ¶ 63.)  In that paragraph,

Switch shows only two still pictures from videos of Aligned's system and then alleges that

Aligned data centers contain "an apparatus with "cabinets," a "hot air containment chamber," and a "warm air escape gap" as claimed in the '495 patent." (D.I. 1, ¶ 63.)

85.    The plain language of claim 1 (reproduced above in paragraph 83), however, requires significantly more than the mere existence of those components in an accused system. In fact, even assuming that all those components existed in Aligned systems – which they do not – that alone is insufficient to prove infringement of each and every limitation set forth in claim 1 of the '495 patent.

86.    Switch's Complaint fails to set forth a basis for its claim of infringement – it merely parrots certain specific structures listed in claim 1 that Switch does not and cannot claim that it invented.  Switch's lack of a basis to claim infringement is confirmed by its July 21, 2017 correspondence to Aligned, in which Switch did not even identify the '495 patent at all.  (*See* D.I. 1-4.)

87.    The Aligned systems operate and are designed using innovative technologies, particularly highly-efficient cooling systems that, among other things, absorb heat at its source using a refrigerant flowing through microchannel coils placed above the server racks and transport the heated refrigerant to a refrigerant-to-water heat exchanger, where heat is removed from the refrigerant.  Aligned's innovative technologies are entirely distinct from that which is embodied in the '495 patent.  And, as clearly shown in the pictures cited in Switch's Complaint and as explained below, Switch is, or should have been aware, that Aligned systems do not contain at least the components called out in paragraph 63 of the Complaint in the manner and orientation required for the apparatus of claim 1 of the '495 patent.  Switch's claim of infringement in the Complaint that relies on evidence that undisputedly establishes non-infringement is groundless, and is evidence of a lack of good faith.

88.    The '495 has two independent claims:  claims 1 and 21.  Claim 21 is an apparatus claim that recites many of the same limitations of the apparatus claimed in claim 1.  And, for at least the same reasons explained below with respect to claim 1 of the '495 patent, Aligned systems do not infringe independent claim 21.  And, if Aligned systems do not meet even a

single limitation of the two independent claims, they cannot infringe any of the remaining dependent claims in the '495 patent.

89.     Aligned does not infringe claim 1, or any other claim, of the '495 patent.  For example, the Aligned system does not contain "a warm air escape gap disposed within the building and disposed above each of the hot air containment chambers, the warm air escape gap collecting the heated air from each of the hot air containment chambers and feeding the heated air to the air conditioning units, the warm air escape gap being lowerly bounded by a ceiling, wherein the ceiling contains ceiling openings that each align with one of the hot air escape openings in each of the hot air containment chambers", as recited in claim 1 of the '495 patent.

90.     As shown in the following images, which Switch relies upon in its Complaint as evidence of alleged infringement, the Aligned system uses a refrigerant distribution system at the top of the hot aisle that distributes refrigerant to microchannel coils above each rack to remove heat directly at the rack level.  In other words, the system does not emit hot air or require the use of a warm air escape gap that is disposed anywhere at the top of the system.  The system is simply not designed to collect and "trap" heated air from anywhere in the hot aisle and then feed such heated air to air conditioning units.  In fact, because heat is transferred to refrigerant directly at the rack level using microchannel coils, no hot air containment chamber with "hot air escape openings" is necessary.  And, it follows then that there is no building openings that align with a hot air escape opening in a hot air containment chamber.



*See, e.g.*, Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=KCaPCc6eHpk)



*See, e.g.*, Complaint, ¶ 63
(citing video at https://www.youtube.com/watch?v=2YnPQ4KmMKU)

91.     Moreover, the Aligned system does not contain "cool air ducts disposed within the building that deliver the cool air from the plurality of air conditioning units toward a periphery of the plurality of rows of cabinets within each of the plurality of cabinet clusters", as recited in claim 1 of the '495 patent.

92.     As explained and shown in the images in paragraph 68 and 90 above, the Aligned system does not utilize cool air or cool air ducting to remove heat from the hot aisle.  Rather, as explained, the Aligned system uses refrigerant and microchannel coils placed above server racks to remove heat between the server rows.  Indeed, at 1:22 to 1:29 of the video found at https://www.youtube.com/watch?v=KCaPCc6eHpk, which is cited in the Complaint, it is explained that, "rather than pushing cold air in," Aligned's "cooling system removes heat instead."

93.     The Aligned system also does not have "pressure differential sensors" as required by claim 1.  Switch appears to be aware that Aligned does not use "pressure differential sensors," because Switch conspicuously does not point to any document or statement providing any evidence of any "pressure differential sensors" in Aligned's systems.  *See* (D.I. 1, ¶¶ 64-67.)

94.     Switch's claim of infringement of claim 1 of the '495 Patent is demonstrably incorrect based on the images and documents that Switch submitted in its Complaint.  Because, under prevailing law, Switch's basis for its claim of infringement is required to be set forth in the Complaint, the Complaint is evidence that Switch does not have a good faith basis to claim infringement, and did not have a good faith basis to represent to Aligned's prospective customer that Aligned infringes any Switch patents.  Aligned seeks a declaration that it does not infringe and has not infringed (whether directly, contributorily, or by inducement) literally or under the doctrine of equivalents any valid claim of the '495 patent.

## COUNT VI

### (Declaratory Judgment Of Invalidity Of The '495 Patent)

95.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-94 above as if fully set forth herein.

96.     The claims of the Patent-in-Suit are invalid under 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.  Aligned reserves the right to identify and rely upon prior art that may be discovered as discovery progresses in this action.

97.     An actual controversy exists between Aligned and Switch based on Switch having filed its Complaint against Aligned alleging infringement of the '495 patent.

98.     Aligned has been injured and damaged by Switch filing its Complaint asserting a patent that Aligned does not infringe.

99.     Aligned therefore seeks a declaration that the '495 patent is invalid for failing to comply with one or more of the requirements set forth in 35 U.S.C. § 101 *et seq.*, including one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT VII

### (Violation of Lanham Act § 43(a))

100.     Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-99 above as if fully set forth herein.

101.     On information and belief, Switch made false and misleading statements to the California customer regarding Aligned's products and services in the course of a competitive bidding process between Aligned and Switch for the California customer's business.  Switch made such statements in an attempt to promote Switch's products and services over Aligned's products and services.

102.     On information and belief, Switch's statements were likely to deceive and actually did deceive the California customer into believing that Aligned's products and services infringe the Patents-In-Suit.

103.     On information and belief, Switch's statements were material to the decision to be made by the California customer Switch and Aligned and were likely to influence the California customer into purchasing data center services from an entity other than Aligned.

104.     On information and belief, Switch, a Nevada-based company, placed these false statements into interstate commerce when it directed them at the California customer from Switch's Nevada headquarters.

105.     Switch's statements to the California customer and others that Aligned infringes the Patents-In-Suit were and are objectively baseless.  Contemporaneous with its claims to others

that Aligned infringed Switch's patents, Switch admitted to Aligned that it did not have sufficient information to claim that Aligned infringed any Switch patent. When Aligned confronted Switch regarding its tortious conduct, Aligned provided to Switch a detailed statement regarding multiple specific required elements of Switch's patents that are not present in Aligned data center systems. Nevertheless, after receipt of this information, Switch continued to interfere with Aligned's business and also did not deny that it had previously made statements to others, including Aligned's prospective customer, baselessly claiming that Aligned infringed Switch patents.

106. Rather than correct its misstatements, Switch then filed this lawsuit. On information and belief, Switch filed its lawsuit after Switch had already made objectively baseless claims to others regarding alleged infringement by Aligned. As set forth in detail above, Switch's lawsuit confirms that Switch did not have a basis to claim infringement when it interfered with Aligned's business opportunities, because the evidence cited in Switch's lawsuit establishes that Aligned does not infringe any asserted claim of any Switch patent.

107. On information and belief, Switch has made its allegations that Aligned infringes the Patents-In-Suit in bad faith because Switch knows that Aligned does not infringe the Patents-In-Suit and/or that the Patents-In-Suit are invalid.

108. On information and belief, Switch made these false statements to the California customer and others not to assert or enforce any property rights it may have in the Patents-In-Suit, but to injure free and fair competition between Aligned and Switch for the California customer's business.

109. Aligned is subject to actual or probable injury from Switch's false statements to the California customer and others due to the likelihood of those statements to cause the California customer and others to unfairly devalue Aligned during competition for the California customer's business.

## COUNT VIII

### (Tortious Interference With Prospective Business Relations)

110. Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-109 above as if fully set forth herein.

111. Prior to the commencement of the present suit by Switch, Aligned had contemplated a contract of economic benefit with the California customer concerning the purchase of data center services from Aligned.

112. On information and belief, Switch was aware of that contemplated contract.

113. On information and belief, Switch intentionally and improperly interfered with Aligned's contemplated contract of economic benefit by communicating with the California customer that Aligned infringed the Patents-In-Suit and by filing this lawsuit on August 7, 2017.

114. On information and belief, Switch's conduct with respect to the California customer was independently wrongful and tortious under both federal and state law.

115. Aligned has suffered a loss of business and prospective economic advantage as a direct result of Switch's conduct toward Aligned and the California customer.

116. On information and belief, Switch's allegations that Aligned infringes valid and enforceable claims of the Patents-In-Suit are objectively baseless. Switch lacks a good faith belief that Aligned infringes any valid and/or enforceable claims of the Patents-In-Suit, particularly in view of admissions to that effect in Switch's correspondence to Aligned on July 21, 2017.

117. Switch, by way of its unlawful acts, seeks economic gain by improperly attempting to enforce patents known to Switch to be not infringed by Aligned and to be invalid and/or unenforceable.

118. On information and belief, Switch has derived, received, and will continue to derive and receive gains, profits, and advantages from the aforementioned acts of tortious interference in an amount which is not presently known to Aligned. By reason of these acts, Aligned is entitled to an award of damages in an amount to be proven at trial.

## COUNT IX

### (Business Disparagement)

119.    Aligned restates and incorporates by reference each and every allegation contained in paragraphs 1-118 above as if fully set forth herein.

120.    On information and belief, Switch orally published statements to the California customer, its agents, representatives, attorneys, and/or employees and other persons in the data center industry (e.g., consultants and brokers) regarding Aligned's alleged infringement of the Patents-In-Suit that were disparaging to Aligned and Aligned's business.

121.    On information and belief, Switch's statements to the California customer and others that Aligned infringes valid and enforceable claims of the Patents-In-Suit were false and objectively baseless.

122.    On information and belief, Switch lacks a good faith belief that Aligned infringes valid and enforceable claims of the Patents-In-Suit, particularly in view of admissions to that effect in Switch's correspondence to Aligned on July 21, 2017.

123.    On information and belief, Switch acted with malice when making its statements to the California customer and others because Switch knew its statements were false or acted with reckless disregard to the truth or falsity of those statements.

124.    On information and belief, Switch acted with ill will towards Aligned, intending to interfere with and damage Aligned's economic interests with respect to the California customer and other business opportunities.

125.    On information and belief, Switch will make similar disparaging statements to Aligned's other current or potential customers unless and until this Court enjoins Switch from doing so.

126.    On information and belief, Switch has derived, received, and will continue to derive and receive gains, profits, and advantages from the aforementioned acts of business disparagement in an amount which is not presently known to Aligned.  By reason of these acts, Aligned is entitled to an award of damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Aligned prays for judgment as follows:

(1)     For a declaration that the manufacture, use, offer for sale, sale, and/or importation of Aligned's data center systems, have not infringed, do not infringe, and will not infringe any valid claim of the Patents-In-Suit;

(2)     For a declaration that the Patents-In-Suit are invalid;

(3)     That an injunction be issued enjoining Switch and its agents, representatives, attorneys, employees, and those persons in active concert or participation with them who receive actual notice herefrom from threatening or initiating further infringement litigation against Aligned or its customers, dealers, suppliers, or any prospective or present sellers, dealers, distributors, or customers of Aligned, based on their manufacture, use, offer for sale, sale, and/or importation of Aligned systems, or charging them either orally or in writing with infringement of the Patents-In-Suit, based on their manufacture, use, offer for sale, sale, and/or importation of Aligned systems;

(4)     That an injunction be issued enjoining Switch and its agents, representatives, attorneys, employees, and those persons in active concert or participation with them who receive actual notice herefrom from making false claims and/or disparaging remarks, orally or in writing, about Aligned to data center brokers or consultants or potential Aligned customers regarding alleged infringement of the Patents-In-Suit;

(5)     For damages for Switch's violation of Lanham Act § 43(a) in an amount to be proven at trial;

(6)     For damages for Switch's tortious interference with Aligned's prospective business relations in an amount to be proven at trial;

(7)     For damages for Switch's disparagement of Aligned's business in an amount to be proven at trial;

(8)     That this case be adjudged to be an exceptional case under at least 35 U.S.C. § 285, and that the Court award Aligned its attorneys' fees and costs; and

(9)     That the Court award all other and further relief as it deems just and proper.

**<u>JURY TRIAL DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Aligned hereby requests a trial by jury of all issues so triable.

Dated: August 16, 2017                                          Respectfully submitted by:

*/s/ Michael E. Jones*
Michael E. Jones
SBN: 10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-531-3939
mikejones@potterminton.com

Michael A. Berta
Michael.berta@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas Lee
Nicholas.lee@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

ATTORNEYS FOR DEFENDANT
ALIGNED DATA CENTERS, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 16, 2017, a true and correct copy of the foregoing was served to the parties counsel of record via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Michael E. Jones*