IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SWITCH, LTD., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-574-JRG |
| | § | |
| ALIGNED DATA CENTERS LLC and | § | |
| MTECHNOLOGY INC. | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
|     Defendants. | § | |

**PLAINTIFF SWITCH, LTD.'S MOTION FOR EXPEDITED INSPECTION OF
ALIGNED DATA CENTER'S PHOENIX AND PLANO FACILITIES**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  THE COURT SHOULD ALLOW AN EXPEDITED INSPECTION OF
     ALIGNED DATA CENTER'S PLANO AND PHOENIX FACILITIES. ............................. 4

     A.   Governing Legal Standard. ........................................................................................ 4

     B.   Switch's Proposed Discovery Request. ..................................................................... 5

     C.   All Factors Support Expedited Discovery. ................................................................ 6

          1.  Although Switch Has Not Yet Filed a Preliminary Injunction, Its Forthcoming
              Requests Weighs in Favor of Its Discovery Request. ...................................... 6

          2.  Switch's Requested Discovery Is Narrow and Specifically Tailored to the
              Evidence Needed for Its Preliminary Injunction. ............................................ 6

          3.  Switch's Requested Discovery Is Necessary for Efficient Early Resolution
              of Switch's Preliminary Injunction Motion. .................................................... 7

          4.  It Is Not Burdensome for Aligned Data Centers to Comply with Switch's
              Request. ............................................................................................................ 8

          5.  The Timing of Switch's Discovery Request Does Not Weigh Against
              Expedited Discovery. ....................................................................................... 9

III. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**CASES**

*Abbott Labs v. Sandoz, Inc.*
  544 F.3d 1341 (Fed. Cir. 2008) ............................................................................................... 2

*Apple Inc. v. Samsung Electrs. Co.*
  No. 11-cv-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011) ................................ 6, 7

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*
  664 F.3d 922 (Fed. Cir. 2012) .................................................................................................. 2

*Elargo Holdings, LLC v. Doe-68.105.146.38*
  318 F.R.D. 58 (M.D. La. 2016) ................................................................................................ 7

*Jefferson v. S. Recovery Mgmt., Inc.*
  No. Civ. A. 95-2290, 1995 WL 542475 (E.D. La. Sept. 12, 1995) .......................................... 8

*Millennium TGA, Inc. v. Doe*
  No. 2:11-cv-0303080, 2012 WL 219329 (E.D. Cal. Jan. 23, 2012) ......................................... 9

*Robert Bosch LLC v. Pylon Mfg. Corp.*
  659 F.3d 1142 (Fed. Cir. 2011) ................................................................................................ 2

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
  208 F.R.D. 273 (N.D. Cal. 2002) ............................................................................................. 7

*Uniloc USA, Inc. v. Apple Inc.*
  No. 2:17-cv-00258-JRG, 2017 WL 3382806 (E.D. Tex. July 21, 2017) .................................. 5

**RULES**

Fed. R. Civ. P. 26(f) ........................................................................................................................ 4

I.      INTRODUCTION

This is a direct competitor case.  Switch, Ltd., an industry leader in data center and colocation services, recently discovered that Aligned Data Centers, LLC has implemented Switch's patented technology in its relatively new data center facilities in Plano, Texas and Phoenix, Arizona.  Switch and Aligned Data Centers are currently directly competing for clients in a real and expedited manner.  Most notably, one potential customer toured Switch's facility in connection with a contemplated contract; a potential deal that, if completed, would make that potential customer ("Customer X") one of Switch's larger customers.  In fact, it would be one of the larger colocation deals in the industry.  Castor Decl. ¶¶ 2-3.  Negotiations with Customer X are ongoing.  *Id.*  ¶ 3.  In the context of those negotiations, Switch was informed that Customer X is also considering Aligned Data Centers, a relative upstart in colocation services.  In fact, a Customer X employee who conducted data center audits of both Switch and Aligned informed Switch that Aligned's "caging and cooling" … "look just like Switch."  *Id.*  ¶ 4.  Switch also recently discovered that another customer with a long-standing relationship with Switch ("Customer Y") recently contracted with Aligned for additional colocation services in Aligned's Phoenix Arizona facility.  Prior to entering that contract, this customer had been discussing contracting with Switch to build Customer Y its own Switch data center in Arizona.  *Id.*  ¶ 6

These circumstances constitute concrete, unmistakable evidence that Aligned's continued marketing and use of Switch's technology has irreparably harmed Switch and continues to present an imminent risk of that harm increasing.  More than the dollars lost and at risk in these specific contemplated contracts, Switch stands to lose precious market share in a rapidly evolving marketplace to a relative upstart competitor simply because that competitor is using and marketing Switch's patented technologies.  When forced to compete against its own technology, Switch may be forced to offer lower prices (price erosion) or otherwise lose the opportunity

1

entirely.  Further, because Switch's technology appears to allow Aligned Data Centers to at least advertise a "PUE" of 1.15,[1] Switch's reputation as the gold standard for efficiency is harmed.

These are textbook instances of irreparable harm.[2]  *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (evidence of irreparable harm may include loss of market position and opportunities, loss of revenue, and research and development); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (reasoning that "compet[ing] against its own patented invention" constitutes a substantial hardship to a patent owner).  In light of these past and continuing harms, Switch intends to file an early motion for preliminary injunction.

Aligned's publicly available marketing materials include three-dimensional renderings and prototypes which strongly suggest that Aligned's data centers infringe the patents-in-suit. For example, Aligned's facilities generally include a "customer pod," which, like the inventions claimed in the patents-in-suit, is designed to contain and extract the server exhaust in a "hot air containment chamber" between the parallel rows of server cabinets:

---

[1] "PUE" stands for "Power Usage Effectiveness," which measures the ratio of how much energy is used by the servers themselves as compared to the energy overhead, like cooling.  Because customers of Switch and Aligned Data Centers both pay for power, a lower PUE leads to lower costs for the customer and provides significant competitive advantage.

[2] Additionally, legal remedies will not be adequate.  Although Switch has entered into licenses for the patents-in-suit, the nature of those licenses ensures that the licensees cannot compete against Switch in Switch's market.  Castor Decl. ¶ 7.



Source: https://www.youtube.com/watch?v=KCaPCc6eHpk at 1:19 (last visited Aug. 6, 2017).

Aligned's structure also includes features, like Switch's, that allow modular construction of the hot aisle containment pods. For example, Aligned's customer pod apparatus includes "an interior frame structure that is independent of and not structurally tied to the plurality of cabinets," '389 Patent Claim 1, that includes multiple pluralities of vertical and horizontal support brackets:



Source: https://www.youtube.com/watch?v=q2nXSUi7Ag8&feature=youtu.be&t=6 at :03 (last visited Aug. 7, 2017).

This evidence, and the other publicly available evidence, strongly suggests infringement—both based on the direct evidence of Aligned's data center designs as well as the source of some of their designs, Steven Fairfax. As noted in the Complaint, Mr. Fairfax had intimate access to Switch's own facilities prior to and while designing the Aligned facilities.

3

However, most of the publicly available evidence amounts to artistic renderings of the relevant structures in Aligned's offerings. These renderings often appear to omit critical information. Of the information that the renderings do present, the information at times appears inconsistent. For example, some renderings show "ladder racks" attached to the customer pod, while others appear to show the same structure unattached. *Compare* Summers Decl. ¶ 2 *with id.* ¶ 4. Some renderings show two tiers of "ladder racks" above the cabinets while others show only one. *Compare id.* ¶ 2 *with id.* ¶ 3. And none of the renderings or photographs appear to show a fully operational pod complete with all relevant communications and power wiring in sufficient detail to determine the precise placement of supports for all such wiring. *See, e.g.*, Summers Decl. ¶¶ 2-4.

Although the publicly available images are facially similar to Switch's designs, these conflicts and omissions hinder Switch's ability to present a definitive picture of Aligned Data Centers' design and structure for purposes of a likelihood of success infringement analysis. Given the competitive implications of this case and the ambiguities of this available information, Switch asks the Court to grant limited expedited discovery to allow Switch to inspect Aligned Data Centers' Plano and Phoenix facilities.

## II. THE COURT SHOULD ALLOW AN EXPEDITED INSPECTION OF ALIGNED DATA CENTER'S PLANO AND PHOENIX FACILITIES.[3]

### A. Governing Legal Standard.

While the general rule is that discovery does not begin the parties conduct a Rule 26(f) conference, there are certain circumstance where pre-conference discovery is warranted. Although some courts have analyzed the need for pre-suit discovery under a preliminary

---

[3] To the extent this motion remains pending after the parties Rule 26(f) conference, Switch asks the Court to construe the present motion as one to compel inspection on the dates requested, September 5 and September 7, 2017, on the terms set forth in the request.

4

injunction-style analysis, this Court recently rejected that line of authority and instead determined that, applying the majority rule, expedited discovery should be allowed under a showing of "good cause." *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-cv-00258-JRG, 2017 WL 3382806, at *2 (E.D. Tex. July 21, 2017). Under that analysis, a court evaluates five factors to determine whether to allow pre-conference discovery to proceed: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Id.* at *1.

### B. Switch's Proposed Discovery Request.

Switch seeks limited, tailored discovery. Rather than seeking a slew of documents relevant to the litigation or a host of interrogatory requests, Switch seeks one thing: an inspection of Aligned Data Centers' Plano and Phoenix facilities, including an inspection of the customer "server pods," and all areas sufficient to show the data, electrical, and cooling systems pathways. The specific requests for inspection are attached as Exhibit A.[4] These requests address the

---

[4] For the Court's convenience, the entire request for the Phoenix facility is below. The Plano request is substantively identical but for a change of the relevant addresses and dates.

**Request for Inspection No. 1:**

Please make available for entry and inspection Aligned Data Centers' Phoenix facility, located at 2500 W. Union Hills Dr., Phoenix AZ, to include such activities as viewing, measuring, photographing, videotaping, or testing of Aligned Data Centers' Phoenix facility on September 5, 2017 at 9:00 AM until 5:00 PM. Specifically, inspection of the following designated property, objects, and operations: (1) all areas including any data center "pods," whether or not currently operating; (2) all areas sufficient to show the path of Aligned Data Centers' data and electrical wiring from outside the facility to the electronic equipment within the "pods" and from the electronic equipment in the pods "pods" to outside the facility; (3) all areas sufficient to show Aligned Data Centers' complete system for cooling the "pods," including but limited to areas sufficient to show the "microchannel coils," the "eSync absorption unit," the "heat exchanger," the "eOPTI-TRAX CDU," the "CACTUS," and all piping/ducting between these systems; (4) all temperature, pressure, and pressure differential sensors; (5) all computer instrumentalities that display or control the operation or status of (1)-(4) above.

5

limited need for preliminary injunction related discovery concerning ambiguities in the publicly available information about how the customer pods in Align Data Centers' facilities are constructed and operate.

### C. All Factors Support Expedited Discovery.

As discussed below, all five factors weigh in favor of Switch's expedited discovery request.

    1. <u>Although Switch Has Not Yet Filed a Preliminary Injunction, Its Forthcoming Requests Weighs in Favor of Its Discovery Request.</u>

Although Switch has not yet done so, Switch intends to file a motion for preliminary injunction and requested such relief in its complaint. As discussed above, Switch will be irreparably harmed absent such an injunction pending this lawsuit. Switch has already lost potential business and another significant contract hangs in the balance. Similar harms are likely to come as Switch is forced to compete against its own technology. Further, the only reason Switch has not yet filed its motion for injunctive relief is due to ambiguities in the publicly available information, ambiguities that will be easily remedied by Switch's requested inspection. While Switch could theoretically file an incomplete motion before taking discovery before later amending or supplementing, Switch believes that the more efficient course of action for both the parties and the Court is to take the discovery before filing. For these reasons, this factor weighs in favor of Switch's request. *Apple Inc. v. Samsung Electrs. Co.*, No. 11-cv-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011) ("While Apple has not yet filed a motion for preliminary injunction, courts have found that expedited discovery may be justified to allow plaintiff to determine whether to seek an early injunction.").

    2. <u>Switch's Requested Discovery Is Narrow and Specifically Tailored to the Evidence Needed for Its Preliminary Injunction.</u>

The narrowness of Switch's request also supports Switch's request for expedited discovery. Switch seeks only one category of information: inspection of Aligned's facilities. Although other categories of information are potentially relevant to Switch's contemplated injunction motion (e.g., Aligned's customer lists, market share trajectory information, negotiation information, and other competitive data relevant to Switch's imminent and ongoing competitive harms), Switch is not requesting this information at this time. Instead, Switch seeks only inspection to discern specifics of Aligned's relevant facility design. This factor, too, favors Switch's expedited discovery request. *See, e.g.*, *Elargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 64 (M.D. La. 2016) (granting expedited discovery in part because request was narrow).

### 3. Switch's Requested Discovery Is Necessary for Efficient Early Resolution of Switch's Preliminary Injunction Motion.

The purpose of Switch's request also supports expedited discovery. Courts recognize that preliminary injunction cases and, in particular, preliminary injunction cases surrounding infringement issues typically present circumstances where expedited discovery may be appropriate. *See Apple v. Samsung*, 2011 WL 1938154, at *2; *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("[C]ourts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition."). Here, Switch seeks its requested inspection to (1) confirm the accuracy of Aligned Data Centers' publicly available information; (2) resolve ambiguities in the renderings contained in that publicly available information, described above; and (3) fill in the gaps omitted from that publicly available information. This will allow the Court to make its preliminary injunction ruling based on a more complete record as it relates to infringement and Switch's likelihood of success on the merits. *See Apple v. Samsung*, 2011 WL 1938154, at *2 ("[E]xpedited discovery

7

would allow the Court to address any requested for preliminary injunctive relief at the outset of the case, thereby providing a measure of clarity to the parties early in the proceeding and facilitating effective case management."). This factor, too, favors Switch's discovery request.

### 4. It Is Not Burdensome for Aligned Data Centers to Comply with Switch's Request.

The lack of burden on Aligned also supports Switch's request. *See, e.g.*, *Jefferson v. S. Recovery Mgmt., Inc.*, No. Civ. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (allowing expedited discovery where discovery sought was "limited" and the type of information "defendants should routinely maintain and have readily accessible."). An inspection of Aligned Data Centers' facility is the most efficient means to evaluate the design and construction of Aligned's data center facilities for purposes of determining the likelihood of success on Aligned's claim of infringement.

To be sure, Switch recognizes that inspections can sometimes raise burden concerns not present in other types of discovery. But those concerns are not present here. Aligned openly advertises regular tours of its facilities to potential customers and to the public. Exhibit B. While Switch suspects its request may be somewhat broader than the public tour, these tours confirm that inspection of Aligned's facilities in not a burdensome undertaking.[5] Moreover, to the extent the inspection presents competitive data center information, and for the purpose of preserving judicial economy, Switch is amenable to an Order from the Court that those portions of the inspection that go beyond the public tour proceed on an "Restricted Attorney's Eyes Only" basis (as defined by the Court's standard Protective Order). Under such circumstances, Switch

---

[5] Additionally, Switch attempted to further reduce Aligned's potential burden by offering to inspect only the Phoenix facility if Aligned would stipulate or otherwise represent that the Plano and Phoenix facilities were the same for purposes of an infringement analysis. Exhibit C. Aligned rejected Switch's request without further discussion. *Id.*

would be able to discern the relevant facts in the most limited, most efficient fashion while still protecting Aligned's confidential information, if any.

Additionally, although time is clearly of the essence in discerning the facts for Switch's contemplated injunction motion, Switch has also given Aligned reasonable notice of its inspection request and a reasonable time period by which to respond. Switch informed Aligned of its proposed requested on August 17, 2017. Switch's requested dates for those inspections allow Aligned between 19-21 days to make any necessary preparations.

### 5. The Timing of Switch's Discovery Request Does Not Weigh Against Expedited Discovery.

Although the last factor is perhaps the least discussed in evaluating the appropriateness of expedited discovery, this factor, too, weighs in favor of—or at least does not weigh against—Switch's request. Aligned Data Centers was served on August 8, 2017 and has already both answered and moved to dismiss the complaint. Those pleadings contain substantial analysis of the patents-in-suit and the relevant accused facilities, highlighting Aligned Data Centers' ability to oversee an inspection with sufficient knowledge of the facts of the case.

Because Aligned has notice of Switch's request and has already appeared, Switch's request is not like those filed far in advance of the discovery process where defendants have yet to be served or retain counsel. *See Millennium TGA, Inc. v. Doe*, No. 2:11-cv-0303080, 2012 WL 219329, at *4 (E.D. Cal. Jan. 23, 2012) (denying expedited discovery in part because proposed deponent had not been named as defendant, had not been served with process, and "may or may not be represented by counsel"). Indeed, Aligned retained litigation counsel before this lawsuit was filed. Dkt No. 1-6.

This is also not a case where the time to conduct typical discovery is so near that expedited discovery is unnecessary. As discussed above, Switch has also already lost a

9

significant business opportunity to Aligned's Phoenix facility.  Switch is in active negotiations concerning one of the nation's larger data center contracts with a potential customer also considering Aligned Data Centers, and during negotiations that customer indicated that Aligned Data Centers' offerings "looked just like Switch, with its caging and cooling."  These facts firmly highlight the ongoing risk of competitive harm inherent in Aligned's use of Switch's technology.  Additionally, since that potential customer informed Switch of Aligned Data Centers and its "just like Switch" facilities, Switch has proceeded rapidly with conducting research into Aligned's designs.  Switch unearthed Aligned's relationship with Steven Fairfax and MTechnology Inc., and its apparent infringement.  Given these stakes, expedited discovery is appropriate.  It will allow this case to proceed to the preliminary injunction stage expeditiously with a more developed record, using evidence of actual facilities rather than prototypes and computer-generated images.

Finally, Switch has neither delayed seeking this discovery nor is its request unduly accelerated.  Switch would have filed the present motion contemporaneously with its complaint, but instead allowed Aligned ten days to voluntarily discuss the issues raised before the parties began to incur significant legal costs.  Instead, Aligned moved to dismiss.  Additionally, Switch has sought to reach agreement on its requests for inspection, but Aligned delayed before opposing Switch's request.  The modest time period for purposes of facilitating discussion outside of litigation (which Aligned rejected without response) and for seeking reasonable agreement to avoid burdening the Court does not weigh against Switch's request.  Rather, this factor, too, weighs in Switch's favor and discovery should be granted.

### III. CONCLUSION

For the reasons stated above, Switch requests that the Court grant its motion for expedited discovery. Specifically, Switch requests that Aligned make its Phoenix facility available for inspection on September 5, 2017 at 9:00 AM and its Plano center available for inspection on September 7, 2017 at 9:00 AM.

DATED: August 22, 2017　　　　　　　　　　　Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

_____
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Harry L. Gillam Jr.
State Bar No. 07921800
Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**ATTORNEYS FOR PLAINTIFF SWITCH, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 22nd day of August, 2017.  Local Rule CV-5(a)(3)(A).

>*/s/ Bradley W. Caldwell*
>Bradley W. Caldwell

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on August 22, 2017, I, Brad Caldwell, counsel for Switch, Ltd., conferred with Michael Berta and Mike Jones, counsel for defendant Aligned Data Centers LLC, concerning the relief requested.  Mr. Berta confirmed Defendant is opposed to the relief requested herein.

>*/s/ Bradley W. Caldwell*
>Bradley W. Caldwell