# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SWITCH, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-574-JRG |
| | § | |
| ALIGNED DATA CENTERS LLC and | § | |
| MTECHNOLOGY INC. | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT
## ALIGNED DATA CENTERS, LLC'S MOTION TO DISMISS [DKT. NO. 8]

## I. INTRODUCTION

Defendant Aligned's motion repeatedly conflates what is required to prove infringement *in a trial* and what is required to bring a claim of patent infringement *in a complaint*. Contrary to Aligned's argument, a complaint need not include element-by-element infringement contentions. "Rule 8(a)(2) . . . generally requires only a plausible 'short and plain statement' of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Switch's Complaint is well-pleaded, and it put Aligned on notice as to the nature of the suit and the allegations. In direct response to the notice provided, Aligned has *already* posited noninfringement arguments. Of course, Aligned is mistaken if it believes that its noninfringement arguments can be adopted in a Motion to Dismiss. Still, Aligned's noninfringement arguments do have some utility—they demonstrate that Aligned has adequate notice of Switch's infringement allegations. Accordingly, the Court should reject Aligned's Motion to Dismiss and allow this case to proceed to discovery.

## II. FACTUAL BACKGROUND

Switch, Ltd. brought this Complaint to stop the infringement of Aligned Data Centers, LLC. *See* Compl. at ¶ 1. Switch is a global technology solutions entity whose core business is the design, construction, and operation of data centers. *See id*. At the heart of Switch's innovative technologies are its founder's, Mr. Rob Roy's, inventions. *See id*. at ¶¶ 3, 26. Mr. Roy's inventions have propelled Switch to being widely recognized as one of the best companies at designing, building and operating data center technology ecosystems. *See id*. at ¶ 23. Indeed, Switch has been recognized as having designed the *very* best data centers in the world—better than data centers built by tech titans such as Google, Apple, Amazon, and Facebook. *See id*. at ¶ 24.

In an attempt to imitate Switch's success, Aligned Data Centers, LLC has begun to replicate Switch's patented technology. *See* Compl. at ¶ 1. In its Complaint, Switch provided the following side-by-side comparisons showing the apparent similarities between Switch's patented T-SCIF technology and what Aligned markets as its "Customer Pod":

**Switch's T-SCIF**
Side View

**Aligned's "Customer Pod"**
Side View




**Switch's T-SCIF**
Front View

**Aligned's "Customer Pod"**
Front View




**Switch's T-SCIF**
Top View Showing the Heat Shield

**Aligned's "Customer Pod"**
Top View Showing the Heat Shield




*See* Compl. at ¶ 7.

Moreover, Aligned's infringement does not appear to be accidental. As detailed in Switch's Complaint, Aligned retained Mr. Stephen Fairfax to design its data centers "at the blank page stage". *See* Compl. at ¶ 53. This was *after,* Mr. Fairfax was given an in-depth tour of Switch's facilities and special access to Switch's designs. *See id*. at ¶¶ 2, 45. Mr. Fairfax also spent four hours with Switch's founder and inventor, Mr. Roy, during which Mr. Fairfax assured Mr. Roy that he had no interest in building and operating data centers. *See id*. at 49. Despite these assurances—and despite the non-disclosure terms Mr. Fairfax agreed to be bound by—Mr. Fairfax was involved in the design and execution of Aligned's data centers. *See id*. at ¶ 54. As alleged in its Complaint, Switch believes that Mr. Fairfax improperly encouraged Aligned to implement Switch's patented technology in the design and makeup of the Aligned data centers. *See id*. at ¶ 55. Specifically, Aligned's facilities mimic Switch's patented technology covering: (i) physical infrastructure, heat containment cabinet layout, and configuration; (ii) electrical pathway configuration; and (iii) the interplay of various component parts. *See id*.

### III. <u>LEGAL STANDARDS</u>

Rule 8(a) of the Federal Rules of Civil Procedure provides that a claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must assume that all well-pleaded facts are true, and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the Motion to Dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d

383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Supreme Court noted, the plausibility requirement is not akin to a "probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007).

Prior to its recent abrogation, Rule 84 of the Federal Rule of Civil Procedure provided that form pleadings automatically satisfy the pleading requirements of Rule 8(a). With the abrogation of Rule 84, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent." *See Solocron Education v. Healthstream*, 2:16-cv-16-JRG, slip. op. at 5-6 (E.D. Tex. June 7, 2016) (citing 35 U.S.C. § 271(a); Fed. R. Civ. P. 8(a); and *Bowlby*, 681 F.3d at 217).

## IV. ARGUMENT

### A. Contrary to Aligned's "Factual Background" Section, Switch Never Admitted It Did Not Have a Basis to Claim Infringement.

Aligned begins its motion by falsely claiming that Switch allegedly "admitted" it had no basis to claim infringement. *See* Mot. at 2. Aligned's brief specifically reads as follows:

> Switch and Aligned compete for customers. (D.I. 1-6.) Prior to filing this lawsuit, Switch wrote a letter to Aligned referring to its patents. In its letter, Switch effectively admitted that Switch had no basis to claim infringement by Aligned, but instead needed more information. (*See, e.g.,* D.I. 1-6.) As Switch puts it in its Complaint, Switch "expressed its curiosity at

Mot. at 2 (highlighting added). Incredibly, the document that Aligned identifies as *Switch's letter* allegedly containing this admission—**docket entry 1-6**—is actually a letter from *Aligned's outside counsel*; clearly not an admission by Switch.

The letter that Switch wrote to Aligned before filing suit is docketed at **entry 1-4**. And in that letter, Switch President and General Counsel Mr. Thomas Morton listed four of Switch's patents, including U.S. Patent Nos. 8,072,780 and 9,622,389 which are asserted in this lawsuit. *See* Compl. at Ex. D. Mr. Morton continued: "We have an obligation to protect Switch's investment in the development of its innovative data center designs. Part of this obligation is to investigate potential *unauthorized practice of Switch's technology*." *Id.* (emphasis added).

Moreover, Mr. Morton expressed concern about how Aligned's "customer pod" seems to "mirror" Switch's technology. *Id.* Far from admitting that Switch had no basis to sue Aligned for patent infringement, Mr. Morton was quite clear that he believed Aligned was infringing Switch's patents. Aligned's attempt to claim the opposite by citing its own letter is troubling. Aligned, curiously, fails to present how Switch's alleged "admission" supports its motion. Switch is uncertain what Aligned was trying to achieve—other than to try to delegitimize this case with a false assertion.

**B. Switch's Direct Infringement Allegations Comply with Fed. R. Civ. P. 8(a).**

The Federal Rules require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Post-abrogation of Rule 84, a "Plaintiff must at least put Defendants on plausible notice of the claims Defendants may need to defend agains[t] by identifying a representative claim from each of the Asserted Patents and providing facts sufficient to create a plausible inference that the claim is infringed by the accused products." *VStream Tech. LLC v. PLR IP Holdings, LLC*, 6:15-cv-974, slip. op. at 9 (E.D. Tex. Aug. 24, 2016) (Love, J.). Switch's Complaint meets and surpasses this standard because of the

detail provided in Switch's Complaint. For example, Switch's Complaint: identifies the patents being asserted. *See* Compl. at ¶¶ 15-20. Switch's complaint identifies Aligned's data centers of infringing the asserted patents. *See id*. at ¶¶ 57, 60, and 62. Switch's complaint identifies Aligned's unauthorized acts of direct infringement. *See id*. at ¶ 58. Switch's complaint provides a detailed background on the nature and benefits of its patented inventions. *See id*. at ¶¶ 21-33. Switch's complaint describes various, infringing aspects of Aligned's data centers. *See id*. at ¶ 55 (specifically identifying how Aligned's data centers mimic Switch's physical infrastructure, heat containment cabinet layout, electrical pathway configuration). And Switch's complaint includes renderings that depict the infringing aspects of Aligned's data centers. *See id*. at ¶¶ 59, 61, and 63. Switch's complaint describes how Aligned is benefitting from its infringement of Switch's patents. *See id*. at ¶¶ 6 and 56. Switch's complaint describes how Mr. Fairfax received information about Switch's technology and was then involved in designing Aligned's data centers. *See id*. at ¶¶ 2-6 and 45-55. Switch's complaint illustrates how its commercial embodiments of its patented technology closely matches Aligned's infringing data centers. *See id*. at ¶ 7. These facts demonstrate Switch has more than met the pleading standard.

### C. Switch's Infringement Allegations Are Not "Conclusory."

Aligned is incorrect in arguing that Switch's infringement allegations are "conclusory." As an initial matter, Aligned misapprehends what it means for an allegation to be conclusory. A truly conclusory allegation is a bare legal conclusion with no factual setting. *Cf. Twombly*, 550 U.S. at 557 ("A statement of parallel conduct . . . needs some *setting* suggesting the agreement necessary to make out a § 1 claim[.]").

Here, Switch's allegations of infringement provide sufficient factual setting because Switch provided hard evidence of Switch's claims. Namely, the renderings of Aligned's data centers provide the factual setting that creates the plausibility that Switch's allegations are true

and that Switch is entitled to relief. Second, Aligned's complaint that Switch did "not provide any explanation of how these screenshots plausibly illustrate a claim of infringement" (Mot. at 8) is misplaced. "Rule 8(a)(2) . . . generally requires only a plausible 'short and plain statement' of the plaintiff's claim, *not an exposition of his legal argument*." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (emphasis added).[1]

The renderings of Aligned's data centers plainly show various claimed components such as a heat shield, thermal barrier, brackets, ladder racks, cabinets, and cabinet rows, etc. *See*, *e.g.*, Compl. at ¶¶ 61 and 63. Aligned does not need Switch to explain why a bracket is a bracket—or how a cabinet is a cabinet—to understand the nature of Switch's allegations. Also, Aligned's argument ignores not only the renderings, and photograph, but also all of the other detailed allegations in Switch's Complaint. This is improper. When reviewing a motion to dismiss, a district court "must consider the complaint *in its entirety*[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). As detailed above, Switch's Complaint goes far beyond allegations of how Aligned's data centers meet the claims of Switch's patents. The Complaint provides extensive background related to how Aligned's data centers are designed, how Aligned is trying to replicate Switch's success by replicating its technology, and how Mr. Fairfax likely used his knowledge of Switch's technology in designing Aligned's data centers. The Court can look to the context of Aligned's infringement to determine whether Switch is plausibly entitled to relief. *See Iqbal*, 556 U.S. at 679 (determining whether a

---

[1] Explanations of how an accused instrumentality infringes a patent are not even required in infringement contentions. *See Juxtacomm-Texas Software, LLC v. Axway, Inc.*, Case No. 6:01-cv-11, slip op. at 1 (E.D. Tex. Oct. 13, 2010) (Davis, J.) ("[A] plaintiff is not required to explain its infringement theories in its PICs.").

Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

### D. Aligned's Noninfringement Theories Are Irrelevant.

In addition to alleging the Switch's claims are merely conclusory, Aligned tries to support its motion to dismiss by positing various noninfringement arguments. But Aligned's noninfringement arguments have no impact on the sufficiency of Switch's pleadings. When considering a 12(b)(6) motion to dismiss, a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *See Bowlby*, 681 F.3d at 218. Here, Aligned's non-infringement arguments cannot impact the sufficiency of Switch's *pleadings* because the facts presented by Switch must be assumed to be true.

The merits of Switch's claims and Aligned's defenses are ultimately issues for the jury *at trial*. While Aligned attempts to make its noninfringement arguments relevant by couching them in terms of plausibility, *Iqbal* does not require courts to handicap the odds of a case. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) ("*Iqbal* and *Twombly*'s emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial."). Moreover, and perhaps most importantly, Aligned's ability to articulate noninfringement arguments demonstrates that Switch's Complaint put Aligned on sufficient notice to enable such a defensive response. *Cf. Vision Advancement, LLC v. Vistakon, Inc.*, No. 2:05-cv-455, slip op. at 4 (E.D. Tex. June 21, 2006) (Davis, J.) ("[Defendant]'s ability to understand [Plaintiff]'s characterization of the [accused product] and provide a non-infringement argument demonstrate that [Plaintiff] has specifically alleged its infringement theory.").

One example of Aligned's defensive non-infringement claims relates to ladder racks. In its motion, Aligned points to a rendering of one of its data centers and claims that it does not meet various limitations of the '780 patent. *See* Mot. at 10. This argument illustrates why a defendant cannot avoid litigation simply by mustering a superficial defense at the pleadings stage. Aligned's defense is that *one of many* prototype pictures does not show tiered ladder racks. However, other pictures and renderings of Aligned's data centers included by Switch in its Complaint *do* show tiered ladder racks, similar to Switch:



*See* Compl. at ¶ 59.

Discovery will reveal the facts. And in the crucible of trial, one party will succeed and the other party will fail on those facts. The pleading stage—a pre-discovery proceeding lacking full facts and a jury—is neither appropriate nor useful for sorting out the parties' relative merits of the parties' claims and defenses. *See Twombly*, 550 U.S. at 556 (the plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal" that the

defendant is liable). *Id.* Here, Aligned's motion is attempting to force conclusion prior to factual discovery and, therefore, Aligned's motion should denied.

### E. Aligned's Demand for Element-By-Element Infringement Contentions in the Complaint Should Be Rejected.

Aligned's motion urges the Court to adopt a view that any pleading that does not explicitly march through "all recited elements" is *per se* implausible. Mot. at 7. The Court has previously encountered—and rejected—this argument:

> In essence, [the defendant] is asserting that [the plaintiff] must include element-by-element infringement contentions within the original complaint to properly state a claim for direct infringement under the *Twombly-Iqbal* standard. The Court declines to infuse Federal Rule of Civil Procedure 8(a)'s well-established pleading standard with such a heightened burden at the initial pleading stage.

*Solocron Education v. Healthstream*, 2:16-cv-16, slip. op. at 5-6 (E.D. Tex. June 7, 2016) (Gilstrap, J.). This ruling was correct. While *Iqbal* was a departure from *pure* notice pleading, the Supreme Court was careful to note that Rule 8 still does not require "detailed factual allegations[.]" *Iqbal*, 556 U.S. at 678; *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("[The defendant] is essentially arguing that, at the pleading stage, [the plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable. But that is not what is required.").

Aligned's similar approach should likewise be rejected.

### F. Switch's Indirect Infringement Allegations Comply with Fed. R. Civ. P. 8(a).

As noted above, while *Iqbal* was a departure from *pure* notice pleading, the Supreme Court was careful to note that Rule 8 still does not require "detailed factual allegations[.]" *Id.* Here, Aligned asks the court to overlook the standard by first arguing that Switch's *indirect* infringement allegations should be dismissed because the *direct* infringement allegations should be dismissed. *See* Mot. at 17. However, this ignores that in alleging indirect infringement,

Switch detailed Aligned's *knowledge* of the patents-in-suit. *See* Compl. at ¶¶ 35 and 69-70. Switch's Complaint also identified *who* directly infringes and *how* Aligned induces that infringement. *See id.* at ¶ 71 ("by, for example, encouraging [Aligned's] customers to use the infringing apparatuses"). These allegations, in light of the detailed allegations that Switch pleaded for direct infringement, satisfy Rule 8(a).

Aligned then argues that the Complaint does not adequately plead specific intent. *See* Mot. at 17. This argument should be rejected as well because Switch's Complaint details pre-suit notice and post-suit notice of Switch's patents (*see* Compl. at ¶¶ 35) even though only post-suit notice is required for pleading indirect infringement. *See Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-cv-44-JRG, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("A pre-suit knowledge requirement for induced infringement would lead to absurd results.").

The Complaint also details how Aligned advertises the benefits of the accused functionality. *See* Compl. at ¶ 56. These allegations alone are sufficient to plead indirect infringement. *See Bill of Lading*, 681 F.3d at 1341-42 (advertising the benefits of the accused functionality "gives rise to a reasonable inference that [the defendant] intend[ed] to induce [its] customers to accomplish these benefits through utilization of the patented method"). And Switch's allegations go further. Specifically, the Complaint details how Aligned is promoting Switch's technology as its own to be used by current and potential customers. *See* Compl. at ¶ 6 ("Aligned is currently using Switch's technology to attract clients for its Arizona and Texas facilities."); *id*. at ¶ 42 (describing how Aligned is "actively pursu[ing] customers and promotes Switch's technology as its own"). These allegations, coupled with the fact that Aligned's customers use of its data centers would necessarily be an act of direct infringement under 35

U.S.C. 271(a), go well beyond merely advertising the benefits of the accused functionality. Rather, these facts give rise to a reasonable inference that Aligned possessed the requisite intent to induce infringement.

## V. **CONCLUSION**

Switch's Complaint is well-pleaded. There can be no doubt that Switch's Complaint put Aligned on notice as to the nature of the suit and the nature of the allegations. Aligned's Motion to Dismiss ignores the facts and pleading standards, raises false accusations, and attempts to force non-infringement conclusions prior to discovery. For these reasons, the Motion should be denied. Justice requires that this case progress so that Switch can conduct discovery and stop Aligned's infringement and irreparable harm.

DATED: August 31, 2017                    Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

*/s/ John Austin Curry*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**ATTORNEYS FOR PLAINTIFF
SWITCH, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on this 31st day of August, 2017. Local Rule CV-5(a)(3)(A).

*/s/ John Austin Curry*
John Austin Curry