**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

SWITCH, LTD.,

       Plaintiff,

v.

ALIGNED DATA CENTERS LLC and
MTECHNOLOGY INC.,

       Defendants.

---

ALIGNED DATA CENTERS, LLC,
ALIGNED DATA CENTERS (DFW), LLC,
and ALIGNED DATA CENTERS
(PHOENIX), LLC,

       Counterclaim-Plaintiffs,

v.

SWITCH, LTD.,

       Counterclaim-Defendant.

CIVIL ACTION NO. 2:17-CV-574-JRG

**JURY TRIAL DEMANDED**

**DEFENDANT ALIGNED DATA CENTERS, LLC'S MOTION TO DISMISS PLAINTIFF
SWITCH, LTD.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF THE ISSUES.................................................................................... 1

III.   FACTUAL BACKGROUND ......................................................................................... 2

    A.     Switch's Pre-Filing Lack Of Basis To Claim Infringement ................................. 2

    B.     Switch's Initial Complaint's Lack Of Basis To Claim Infringement .................... 2

    C.     Switch's Request For Expedited Inspection Of Aligned's Plano Facilities .......... 3

    D.     Switch Abandons Its Original Infringement Allegations........................................ 4

IV.    LEGAL STANDARD.................................................................................................... 5

V.     ARGUMENT ................................................................................................................. 7

    A.     The FAC Affirmatively Demonstrates Missing Claim Limitations ...................... 7

        1.     "cool air ductwork below the thermal barrier ceiling" ............................... 7

        2.     "an opening into the airspace" ................................................................. 10

        3.     "a first horizontal support bracket"......................................................... 12

    B.     The FAC Affirmatively Establishes Aligned's Non-Infringement Defense......... 16

VI.    CONCLUSION............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*Anderson v. Kimberly-Clark Corp.*,
   570 F. App'x 927 (Fed. Cir. 2014) .................................................................5, 7, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................5, 6, 7, 15, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................5, 6, 7, 15

*Bowlby v. City of Aberdeen*,
   681 F.3d 215 (5th Cir. 2012) ...................................................................5

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................8, 9

*Constr. Cost Data, LLC v. Gordian Grp., Inc.*,
   2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) .........................................16

*Cumberland Pharm. Inc. v. Sagent Agila LLC*,
   2013 WL 5913742 (D. Del. Nov. 1, 2013) ...............................................7

*Jaso v. The Coca Cola Co.*,
   435 F. App'x 346 (5th Cir. 2011) .........................................................16

*Kubik v. Intrexon Corp.*,
   2012 WL 13024808 (W.D. Wash. Apr. 30, 2012)....................................5

*Litton Sys., Inc. v. Honeywell, Inc.*,
   140 F.3d 1449 (Fed. Cir. 1998).............................................................7, 9

*London v. Carson Pirie Scott & Co.*,
   946 F.2d 1534 (Fed. Cir. 1991)......................................................7, 12, 16

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ...................................................................6

*Papsan v. Allain*,
   478 U.S. 265 (1985).................................................................................5

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
   2016 WL 3542430 (E.D. Tex. June 28, 2016)..........................................6

*Solocron Educ., LLC v. Healthstream, Inc.*,
   2016 WL 9137458 (E.D. Tex. June 7, 2016)............................................6

38181488v3

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ............................................................................................5, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1, 5

38181488v3

## I.  INTRODUCTION

Plaintiff Switch, Ltd.'s ("Switch") First Amended Complaint for Patent Infringement ("FAC") against Defendant Aligned Data Centers, LLC ("Aligned") suffers from the same fatal defect as its original Complaint: it does not state a claim for patent infringement.  Because the FAC is based on evidence and allegations that affirmatively demonstrate non-infringement, the FAC does not state a plausible claim for relief.

Switch originally alleged infringement of one independent claim each from three different patents, including claim 1 of U.S. Patent No. 9,622,389 ("'389 patent" or the "Patent-In-Suit").  After a first Motion to Dismiss by Aligned (D.I. 8), Switch dropped all three asserted claims, and filed the FAC, now alleging infringement of claim 10 of the '389 patent.  Again, however, as with the last complaint, Switch's FAC and the photographic evidence submitted therewith affirmatively demonstrate that Aligned's data centers—the accused products in this case—lack multiple elements that claim 10 requires.  A direct patent infringement claim is not viable unless the plaintiff can demonstrate that every limitation of the asserted claim is present in the alleged infringing instrumentality.  If even one limitation is missing, the infringement claim fails.  A complaint that, on its face, demonstrates essential elements of the cause of action are entirely missing cannot plausibly state a claim for relief and is subject to dismissal.

It is the plaintiff's burden to sufficiently plead its claims to demonstrate that it is entitled to relief.  With its FAC, Switch has again failed to do so.  Switch's claim for patent infringement fails as a matter of law.  Accordingly, the Court should dismiss the FAC.

## II.  STATEMENT OF THE ISSUES

The issue to be decided is whether Switch's infringement claim set forth in the FAC fails to state a claim upon which relief may be granted, and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

## III.     FACTUAL BACKGROUND

### A.     Switch's Pre-Filing Lack Of Basis To Claim Infringement

Switch and Aligned compete for customers.  (*See, e.g.*, D.I. 57 ¶¶ 1, 6.)  Prior to filing

this lawsuit, Switch wrote a letter to Aligned referring to its patents.  (D.I. 57-2.)  In its letter,

Switch effectively admitted that Switch had no basis to claim infringement, but instead needed

more information.  (*See, e.g.*, *id.* at 2–3 ("I trust you appreciate our need to ***evaluate*** whether

[Aligned's] current facilities or advertised prototypes ***may read*** on Switch's patents.") (emphasis

added).)  As Switch put it in its initial Complaint and its FAC, Switch "expressed its curiosity at

Aligned's data center designs . . . ."  (D.I. 1 ¶ 35; D.I. 57 ¶ 24.)

In the interim, however, despite Switch's admission that it did not have a basis to claim

infringement (*see* D.I. 57-1 at 2–3), Aligned learned that Switch was disparaging Aligned to

potential customers, including a customer for which Switch and Aligned were competing.  (D.I.

1 ¶¶ 1, 6; *see also* D.I. 57 ¶¶ 1, 6.)  When Aligned asked that Switch cease making its baseless

claims and issue corrective statements, Switch filed this lawsuit.  (D.I. 1 ¶¶ 1–6, 40; *see also* D.I.

57 ¶¶ 1–6, 29.)

### B.     Switch's Initial Complaint's Lack Of Basis To Claim Infringement

Switch's initial Complaint asserted three patents against Aligned: the '389 patent and

U.S. Patent Nos. 8,072,780 ("'780 patent") and 8,180,495 ("'495 patent") (collectively, the

"Initial Patents-In-Suit").  (D.I. 1 ¶¶ 57–67.)  Switch's asserted claim 1—and only claim 1—of

each of the Initial Patents-In-Suit against Aligned.  (*Id.* ¶¶ 58, 60, 62.)  Switch also alleged that

Aligned's data centers indirectly infringed the Initial Patents-In-Suit.  (*Id.* ¶¶ 68–74.)  Despite its

length, Switch's initial Complaint dedicated only a handful of paragraphs to Aligned's alleged

infringement of the Initial Patents-In-Suit.  Moreover, these paragraphs included publicly

available photographs and screenshots of publicly available videos clearly showing that specific

2

limitations required by all of Switch's asserted claims were missing from Aligned's data centers. (*See* D.I. 1 ¶¶ 7, 59, 61, 63.)

Aligned moved to dismiss Switch's initial Complaint on the grounds that it did not meet the *Twombly-Iqbal* plausibility requirement for patent infringement, and thus did not state a claim for which relief could be granted, because the initial Complaint affirmatively included evidence showing non-infringement of all exemplary claims of all asserted patents.  (*See* D.I. 8 at 1–2.)  The parties fully briefed the motion by September 14, 2017.  (*See* D.I. 29.)

### C.    Switch's Request For Expedited Inspection Of Aligned's Plano Facilities

Before Switch even responded to Aligned's motion to dismiss—and long before the Federal Rules of Civil Procedure would normally permit discovery—Switch sought the Court's relief to perform a physical inspection of Aligned's Plano data center facilities.  (D.I. 13.) Switch argued that it needed this early discovery to support a forthcoming motion for a preliminary injunction.  (*Id.* at 2.)  Namely, Switch sought to "evaluate the design and construction of Aligned's data center facilities for purposes of determining the likelihood of success on [Switch's] claim of infringement."  (*Id.* at 8.)

Aligned opposed Switch's motion on numerous grounds, including that "Switch improperly [sought] expedited discovery to shore up the allegations it [had] not properly pleaded [in its initial Complaint]."  (D.I. 23 at 5; *see also* D.I. 13-4 at 3 (counsel for Switch informing counsel for Aligned that the purpose of Switch's expedited inspection request was to "get relevant infringement facts").)  Nevertheless, the parties ultimately stipulated that Switch would be permitted to inspect and photograph sections of Aligned's Plano facility prior to commencement of ordinary discovery.  (*See* D.I. 39, 40.)  The inspection took place on October 27, 2017.  (*See* D.I. 39 ¶ 2.)  Pursuant to the parties' stipulation, Aligned provided Switch with

38181488v3

photographs from the inspection on November 14, 2017.  (Berta Decl., Ex. A.)  To date, Switch has not sought a preliminary injunction.

### D.      Switch Abandons Its Original Infringement Allegations

Pursuant to P.R. 3-1 and the Court's Order Setting Scheduling Conference (D.I. 41), on November 14, 2017, Switch served its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") on Aligned.  Switch's Infringement Contentions did not include any allegations that Aligned infringed claim 1 of the Initial Patents-In-Suit.  Instead, and for the first time, Switch asserted that Aligned infringed claim 10 of the '389 patent.  Switch noted that its decision to drop its initial infringement claims was due to its "continued investigation, the inspection of Aligned Data Centers' Plano Demonstration Unit, and factual representations made by Aligned in its answer and in its Motion to Dismiss briefing."  (D.I. 44-1 / D.I. 45 at 3.)[1]

On January 9, 2017, Switch filed its FAC.  (*See* D.I. 57.)  The FAC formally dropped all claims of direct infringement against Aligned for all claims of the '780 and '495 patents and all claims of indirect infringement against Aligned for all of the Initial Patents-In-Suit.  (*See id.*)  The FAC also formally dropped the claim of infringement against Aligned for claim 1 of the '395 patent and asserted claim 10 of the '395 patent instead.  (*See id.*)  With its FAC, Switch

---

[1] Switch's stated reasons for abandoning its original claims only serve to reinforce that Switch had no basis to bring this action in the first place.  Switch bases its FAC on the same publicly available information on which it brought the original Complaint.  (*Compare* D.I. 1 ¶¶ 7, 63, *with* D.I. 57 ¶¶ 2, 54, 62, 64.)  Thus, Switch should have known in July 2017 that Aligned did not infringe the originally asserted claims.  Further, if Switch only came to its decision to assert claim 10 of the '389 patent after its physical inspection of Aligned's facilities, then Aligned's concern that Switch was improperly using the expedited inspection to substitute for a proper pre-filing investigation was realized.  In other words, Switch's stated reason for seeking an expedited inspection—that it needed one to support a preliminary injunction motion and not because Aligned had filed a motion to dismiss—was pretextual.  After obtaining the expedited inspection, Switch dropped all previously asserted claims and filed the FAC without ever having sought a preliminary injunction.

validated everything in Aligned's original motion to dismiss.  The next day, the Court reached

the same conclusion and denied Aligned's original motion to dismiss as moot.  (D.I. 58.)

## IV.    LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted when a complaint

fails to state a claim upon which relief can be granted.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  To survive a motion to dismiss, the factual allegations in the complaint "must

be enough to raise a right to relief above the speculative level," and they must be sufficient to

"state a claim for relief that is plausible on its face."  *Id.* at 555, 570; *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  A claim is not plausible unless it "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Bowlby v. City of Aberdeen*,

681 F.3d 215, 219 (5th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677).

When deciding a motion to dismiss, a court must accept all factual allegations in the

complaint as true and draw all reasonable inferences from the facts in the complaint in favor of

the plaintiff.  *Iqbal*, 556 U.S. at 678.  A court, however, is not "bound to accept as true a legal

conclusion couched as a factual allegation."  *Papsan v. Allain*, 478 U.S. 265, 286 (1985); *see

also Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework,

they must be supported by factual allegations.").  Nor is a court required to "accept as true

allegations that contradict matters properly subject to judicial notice or by exhibit," or

"unreasonable inferences."  *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir.

2014); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir.

2004) (the court is not required to "strain to find inferences favorable to the plaintiff[]" nor

accept the plaintiff's "unwarranted deductions"); *Kubik v. Intrexon Corp.*, 2012 WL 13024808,

at *1 (W.D. Wash. Apr. 30, 2012) ("[T]he Court is required only to draw reasonable inferences

from [the complaint], not whatever inferences Plaintiff chooses.").

Since the abrogation of Rule 84 and the appendix Forms to the Federal Rules of Civil Procedure in December 2015, courts—including courts in this district—have concluded that the *Iqbal / Twombly* plausibility standard governs patent infringement claims.  *See, e.g.*, *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016) ("Now, to state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'"); *Solocron Educ., LLC v. Healthstream, Inc.*, 2016 WL 9137458, at *2 (E.D. Tex. June 7, 2016).  Accordingly, Switch's claim is to be examined for plausible sufficiency in light of *Twombly* and *Iqbal*.

In considering a motion to dismiss under *Twombly* and *Iqbal*, a court can follow a "two-pronged approach" to evaluate the sufficiency of a complaint.  *Iqbal*, 556 U.S. at 679.  First, it should identify which pleading allegations are no more than conclusions, and therefore are not entitled to a presumption of truth.  *See id.*  Then, a court can determine whether the "well-pleaded factual allegations," assumed to be true, "plausibly give rise to an entitlement to relief."  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a Defendant has acted unlawfully."  *Id.* at 678 (internal quotation marks omitted).  In making its determination, the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *See Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Switch's FAC is properly dismissed under this controlling precedent.

## V.      ARGUMENT

### A.      The FAC Affirmatively Demonstrates Missing Claim Limitations

Switch alleges that Aligned infringes claim 10 of the '389 patent; however, with its FAC,

Switch submitted evidence that Aligned's data centers lack elements that claim 10 requires.

"There can be no infringement as a matter of law if a claim limitation is totally missing from the

accused device." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991); *see*

*also Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998) ("Literal

infringement requires that the accused device contain each limitation of the claim *exactly*; any

deviation from the claim precludes a finding of literal infringement." (emphasis added)).  Courts

have dismissed patent infringement suits at the pleading stage when the complaint affirmatively

establishes that a claim limitation cannot be met.  *See, e.g.*, *Anderson*, 570 F. App'x at 931;

*Cumberland Pharm. Inc. v. Sagent Agila LLC*, 2013 WL 5913742, at *1–3 (D. Del. Nov. 1,

2013).  Thus, because the FAC affirmatively demonstrates that Aligned's data centers lack

required elements from claim 10, Switch's allegation that Aligned infringes the '389 patent does

not and cannot give rise to a plausible claim for relief and is properly dismissed.  *Twombly*, 550

U.S. at 555, 570; *Iqbal*, 556 U.S. 662, 678 (2009)

#### 1.      *"cool air ductwork below the thermal barrier ceiling"*

Claim 10 requires "cool air ductwork."  But claim 10 does not require cool air ductwork

on its own; rather, claim 10 requires this cool air ductwork in relation to and in concert with

other required claim elements.

For example, the "cool air ductwork" claim 10 requires must be located "below the

thermal barrier ceiling."  ('389 patent, col. 11:5–6.)  Further, the "cool air ductwork" must be

supported by vertical support brackets that are "disposed on the floor at one end."  (*Id.*, col.

10:65–11:1.)  Said more simply, the cool air ductwork has to be located beneath the thermal

barrier ceiling and supported from below by a vertical bracket that is connected to the floor.

Such an arrangement is depicted in Figure 4B of the patent:



FIG. 4B

The '389 patent discloses that element 1705 is the floor, elements 1708 and 1708A are the

vertical bracket, element 1710 is the cool air ductwork, and element 1740 is the thermal barrier

ceiling.  (*See* '389 patent, col. 7:23–37, col. 8:35–38.)

Nowhere in the FAC does Switch allege that Aligned literally provides "cool air

ductwork."  Nor could it.  As Aligned has maintained throughout this litigation, its systems do

not utilize such ductwork to keep the electronic equipment housed therein cool.  (*See* D.I. 8 at

11–13.)  Instead, Switch alleges that "[t]he cool air ductwork is comprised of the portion of the

eSync unit used to transfer cooled air from the coil(s) to outside the eSync unit."  (D.I. 57 ¶ 58;

*see also* D.I. 44-1 / D.I. 45, Ex. 1 at 9–11.[2])  Switch thus contends that the eSync units satisfy the

"cool air ductwork" limitation.  (D.I. 57 ¶ 58.)

---

[2] Because Switch referred to its Infringement Contentions in the FAC as  providing "more specifics" to the
infringement allegations set forth in the FAC (*see* D.I. 57 ¶ 64) and the allegations in both the FAC and the
Infringement Contentions are central to Switch's claim (*i.e.*, Aligned's alleged infringement of the '389 patent), the
Court may properly consider Switch's Infringement Contentions as a part of the pleadings and consider them in
connection with this Motion.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see*

Switch, however, admits that these eSync units are located ***above*** what it contends is the "thermal barrier ceiling."  (D.I. 57 ¶ 53 ("The eSync units are located within the airspace ***between the ceiling and the thermal barrier ceiling*** . . . ."), ¶ 58 ("All of the vertical support brackets support the thermal barrier ceiling ***and the equipment located above the thermal barrier ceiling (i.e., the eSync units)***."), ¶ 59 ("Because the eSync units are located ***on top of the thermal barrier ceiling*** . . . .") (all emphases added).)  Indeed, the artist renderings Switch submitted with its complaint affirmatively shows the eSync units located above what Switch contends is the thermal barrier ceiling:



(D.I. 57 ¶¶ 51, 54.)

As discussed above, the plain language of claim 10 requires the "cool air ductwork" to be located ***below*** the thermal barrier ceiling.  ('389 patent, col. 10:65–11:6.)  Regardless of whether Switch ultimately can demonstrate that the eSync units satisfy claim 10's "cool air ductwork" limitation (which it cannot), Switch's infringement claim must fail because Switch concedes that the eSync units are not located below the thermal barrier ceiling—as claim 10 requires.  *See*

---

*also id.* at 499 ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

38181488v3

*Litton Sys.*, 140 F.3d at 1449.  Because the FAC affirmatively demonstrates that at least this limitation is missing, Switch's patent infringement claim is not plausible and fails as a matter of law.

   **2.**   *"an opening into the airspace"*

   Claim 10 also requires "an opening into the airspace" from the hot containment chamber through the thermal barrier ceiling.  (*See* '389 patent, col. 10:46-50.)  Again, however, claim 10 requires this limitation in relation to other required elements of the claim.  Namely, the thermal barrier ceiling must be "disposed below the ceiling and creat[e] an airspace between the thermal barrier ceiling and the ceiling."  (*See id.*, col. 10:38–52.)  Such an arrangement is illustrated in Figure 4B of the patent:



FIG. 4B

The '389 patent recites that element 1750 is the ceiling, element 1740 is the thermal barrier ceiling, element 1730 is the airspace between them, and element 1720 provides an opening into the airspace 1730 between the thermal barrier ceiling 1740 and the ceiling 1750.  (*See id.*, col. 7:23–48, col. 8:35–38.)

Aligned's data centers entirely lack such an opening.  As can be clearly seen from the artist renderings Switch included in its FAC, Aligned's pod is sealed off at the top:



(D.I. 57 ¶ 54.)  Hence, Switch's pleading affirmatively demonstrates that Aligned's data center does not include a pod with an opening into the airspace above the pod and thus cannot meet this limitation of claim 10.

Switch, however, alleges that "the space bounded by the thermal shield and the thermal barrier ceiling" in Aligned's data centers "provides an opening into the eSync units."  (D.I. 57 ¶ 53.)  Further, Switch alleges that "[t]he eSync units are located within the airspace between the ceiling and the thermal barrier ceiling . . . ."  (*Id.*)  Thus, Switch contends that the openings into the eSync units meet the "opening into the airspace" limitation required by claim 10.  (*See id.*)

This allegation fatally conflicts with the other allegations in the FAC.  As discussed above, Switch also contends that the eSync units constitute claim 10's required "cool air ductwork."  (*See* Part V.A.1, *supra*.)  As discussed above, this "cool air ductwork" must be located below the thermal barrier ceiling to meet the plain language of claim 10.  (*Id.*)  The FAC, however, alleges that the openings into the eSync units also meet an entirely separate claim 10

11

limitation: the opening into the airspace plenum from the hot aisle through the thermal barrier ceiling.  (D.I. 57 ¶ 53.)  If the openings into the eSync units are interpreted to be the openings into the airspace required by claim 10, the FAC implicitly requires the eSync units to be located above the height of the thermal barrier ceiling.  Because the FAC thus concedes both implicitly and explicitly[3] that the eSync units are located above the purported thermal barrier ceiling, they cannot also be located ***below*** the thermal barrier ceiling to satisfy claim 10's "cool air ductwork" limitation.  Conversely, if the eSync units are interpreted to satisfy the "cool air ductwork" limitation, they must be located below the thermal barrier ceiling to do so, which precludes them from being located above the thermal barrier ceiling so that the openings into the eSync units can also meet claim 10's "opening into the airspace" limitation.

Even viewing the FAC in the light most favorable to Switch, the FAC offers no plausible explanation how the eSync units can meet both of these limitations simultaneously, and Switch presents no additional evidence in support of its allegations regarding this limitation.  *See Southland Sec. Corp.*, 365 F.3d at 361 (The court is not required to "strain to find inferences favorable to the plaintiff[]" nor accept the plaintiff's "unwarranted deductions.").  Because the FAC affirmatively demonstrates that Switch's allegations regarding the opening into the airspace result in at least one missing limitation from claim 10, the FAC fails to plausibly state a claim for patent infringement and is properly dismissed.  *See London*, 946 F.2d at 1539 ("There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device.").

### 3. *"a first horizontal support bracket"*

Claim 10 also requires "a first horizontal support bracket disposed above a cabinet height that intersects a middle hot aisle portion so that an area on two opposite sides of each hot aisle where the cabinets can be placed does not have any vertical support brackets disposed therein."

---

[3] *See* D.I. 57 ¶ 59 ("[T]he eSync units are located on top of the thermal barrier ceiling . . . .")

('389 patent, col. 10:52–57.)  This horizontal support bracket provides support for the frame structure surrounding the cabinets and the hot aisle so that "server cabinets [can] be spaced closely together" without vertical supports for the surrounding frame structure in between them. (*See* D.I. 57 ¶ 55.)  Such an arrangement is depicted in Figure 5 of the patent:



FIG. 5

The '389 patent makes it clear that element 1780 is the first horizontal support bracket from claim 10, as "structural beam 1780 . . . open[s] up the hot aisle to allow for the placement of cabinets more easily" without the need for vertical supports therein.  (*See* '389 patent, col. 8:32–46.)

The artist renderings that Switch submitted in support of its assertion that Aligned practices this limitation clearly shows that this horizontal structural beam is entirely lacking from Aligned's data centers:



(D.I. 57 ¶ 2)



(*Id.*)



(*Id.* ¶ 60.)  As can be seen, Aligned's data centers entirely lack the first horizontal support bracket that claim 10 requires.  This alone is grounds for the Court to dismiss the FAC.  *See Anderson*, 570 F. App'x 927, 931 (Fed. Cir. 2014) (Courts are not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").  Nevertheless, Switch alleges that Aligned still meets this limitation because "any of the thermal shield horizontal support brackets, in combination with the other thermal shield horizontal support brackets and horizontal ceiling supports" satisfy this limitation.  (*Id.* ¶ 55.)

Switch's allegation fails to satisfy the *Twombly / Iqbal* pleading standard.  *First*, the FAC does not specify which elements of Aligned's data centers constitute the "thermal shield horizontal support brackets" that meet this limitation.  (*See id.*)  Thus, Aligned is wholly without notice as to how its data centers allegedly infringe the '389 patent.  *See Twombly*, 550 U.S. at 444 (A complaint must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.") (ellipsis in original).  *Second*, Switch's Infringement Contentions, which purportedly provide "[m]ore specifics" (*see* D.I. 57 ¶ 64), do not.  Rather, Switch's Infringement Contentions contain the same generalized allegations that "any of the thermal shield horizontal support brackets" in Aligned's data centers can satisfy this limitation.  (*See* D.I. 44-1 / D.I. 45, Ex. 1 at 6–8.)[4]  *Finally*, Switch alleges that "horizontal ceiling supports" in Aligned's data center can meet this limitation.  (D.I. 57 ¶ 55.)  Switch, however, provides no factual allegations in support of this conclusion beyond its say-so.  Under the controlling *Twombly / Iqbal* pleading

---

[4] Further still, one of the annotated photographs Switch provides in support notes that two horizontal brackets running above the cabinets and parallel to the hot aisle purportedly meet this limitation.  (*See* D.I. 44-1 / D.I. 45, Ex. 1 at 7.)  Claim 10, however, requires the first horizontal support bracket at issue to *intersect* the hot aisle—not run parallel with it.  ('389 patent, col. 10:52–57.)  Thus, on Switch's own analysis, this element of Aligned's data center cannot meet claim 10's "first horizontal support bracket" limitation.

standard, this is insufficient.  The Court can and should disregard Switch's conclusory allegations regarding this point.  *Iqbal*, 556 U.S. at 679.

Because Switch has not plausibly alleged that Aligned's data centers contain at least a "first horizontal support bracket" as required by claim 10, the FAC does not state a claim for patent infringement and fails as a matter of law.

### B.     The FAC Affirmatively Establishes Aligned's Non-Infringement Defense

Alternatively, Switch's FAC is also properly dismissed because it affirmatively establishes Aligned's non-infringement defense.  "[D]ismissal for failure to state a claim based on [an affirmative] defense should be granted . . . when 'the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations of the complaint.'"  *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011); *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, 2017 WL 2266993, at *6 (S.D. Tex. Apr. 24, 2017) (When a complaint "admits all the ingredients of an impenetrable defense," the plaintiff "pleads itself out of court.").

As discussed above, the evidence that Switch chose to include in its FAC affirmatively demonstrates that Aligned's data centers lack several required limitations from claim 10.  As such, Switch's FAC does not establish patent infringement—it establishes Aligned's non-infringement defense, as "there can be no infringement as a matter of law if a claim limitation is totally missing from the accused device."  *London*, 946 F.2d at 1539.  Because the FAC admits all of the elements of Aligned's non-infringement defense, any rejoinder Switch may have has been "foreclosed by the allegations of [the FAC]."  *Jaso*, 435 F. App'x at 352.  Switch has pleaded itself out of court and its FAC is properly dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Aligned respectfully requests that this Court grant the instant motion and dismiss Switch's FAC.

16

DATED:  January 24, 2018

Respectfully submitted,

*/s/ Michael A. Berta*
Michael E. Jones
SBN:  10929400
**POTTER MINTON, PC**
110 North College, Suite 500
Tyler, Texas 75702
Tel:    903-597-8311
Fax:    903-531-3939
mikejones@potterminton.com

Michael A. Berta
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel:    415-471-3277
Michael.berta@apks.com

David A. Caine
David.caine@apks.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Tel:    650-319-4710

Nicholas H. Lee
Nicholas.lee@apks.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel:    213-243-4156

*ATTORNEYS FOR ALIGNED DATA CENTERS*
*LLC, ALIGNED DATA CENTERS (DFW), LLC,*
*AND ALIGNED DATA CENTERS (PHOENIX),*
*LLC*

17

38181488v3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 24, 2018.

<div align="center" style="margin-left:40%">

*/s/ Michael A. Berta*
Michael A. Berta

</div>

18