# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SWITCH, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-574-JRG |
| | § | |
| ALIGNED DATA CENTERS LLC | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT
## ALIGNED DATA CENTERS, LLC'S MOTION TO DISMISS [DKT. NO. 61]

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1
II. FACTUAL BACKGROUND .............................................................................................. 2
III. ARGUMENT ........................................................................................................................ 4
    A. Aligned's Argument Depends Only on Claim Construction Arguments that the Court Cannot Resolve on a Motion to Dismiss. ................................................... 4
        1. Switch Plausibly Alleges the Claimed "Cool Art Ductwork." ............................... 4
        2. Switch Plausibly Alleges "An Opening Into the Airspace." .................................. 5
        3. Switch Plausibly Alleges "a First Horizontal Support Bracket." ........................... 6
    B. Aligned's Motion Otherwise Wastes the Court's Time With Irrelevant, False, or Misleading Facts. .................................................................................................... 7
IV. CONCLUSION .................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**

*Bosarge v. Mississippi Bureau of Narcotics*
    796 F.3d 435 (5th Cir. 2015) ............................................................................................... 9

*Gestion Proche, Inc. v. Dialight Corp.*
    No. 4:16-CV-00407, 2017 WL 1551606 (E.D. Tex. May 1, 2017) ............................................ 4

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
    681 F.3d 1323 (Fed. Cir. 2012) ...................................................................................... 1, 4, 5

*Skinner v. Switzer*
    562 U.S. 521 (2011) ........................................................................................................ 1, 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 7, 9

**I.      INTRODUCTION**

Switch stated a plausible claim for infringement when it first filed this lawsuit. *See* Dkt. 26. Based on Switch's continuing investigation—including a review of Aligned's Plano Demonstration Unit—Switch elected to narrow its case. After doing so, it served detailed infringement contentions providing Switch's element-by-element infringement theory, including doctrine of equivalents theories, for claim 10 of the '389 Patent. In addition, to remove a dispute from this Court's busy docket, Switch amended its complaint to include much of that detail in its live complaint thus making Aligned's prior motion moot. Dkt. 57 at ¶¶46-64. Surely, Switch believed, Aligned would not move to dismiss a narrowly tailored complaint that includes detailed limitation-by-limitation explanations of its infringement theories.

Aligned's current motion is baseless. There is no doubt Aligned is on notice of Switch's claim for relief. Indeed, Aligned does not contend otherwise. And there is no question that Switch's First Amended Complaint goes well above and beyond any interpretation of a patentee's pleading burden to allege a claim of direct infringement. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Rule 8(a)(2) . . . generally requires only a plausible 'short and plain statement' of the plaintiff's claim, not an exposition of his legal argument."). Aligned's also motion does not "affirmatively demonstrate" that its non-infringement positions are correct. Instead, it asks the Court to *construe claims* in a particular way to support those positions. Yet it is black letter patent law that "claim construction at the pleading stage—with no claim construction processes undertaken—[is] inappropriate." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 (Fed. Cir. 2012). Because Switch's Complaint alleges a plausible claim of patent infringement, Aligned's motion should be denied.

## II. FACTUAL BACKGROUND

Switch, Ltd. brought this Complaint to stop infringement by Aligned Data Centers, LLC. *See* Compl. at ¶ 1. Switch is a global technology solutions entity whose core business is the design, construction, and operation of data centers. *See id*. At the heart of Switch's innovative technologies are its founder's, Mr. Rob Roy's, inventions. *See id*. at ¶¶ 3, 26. Mr. Roy's inventions have propelled Switch to being widely recognized as one of the best companies at designing, building and operating data center technology ecosystems. *See id*. at ¶ 23. Indeed, Switch has been recognized as having designed the *very* best data centers in the world—better than data centers built by tech titans such as Google, Apple, Amazon, and Facebook. *See id*. at ¶ 24.

In an attempt to imitate Switch's success, Aligned Data Centers, LLC has begun to replicate Switch's patented technology. *See* Compl. at ¶ 1. In its Complaint, Switch provided the following side-by-side comparisons showing the apparent similarities between Switch's patented T-SCIF technology and what Aligned markets as its "Customer Pod":

**Switch's T-SCIF**
Side View

**Aligned's "Customer Pod"**
Side View




| Switch's T-SCIF<br>Front View | Aligned's "Customer Pod"<br>Front View |
|---|---|
|  |  |
| Switch's T-SCIF<br>Top View Showing the Heat Shield | Aligned's "Customer Pod"<br>Top View Showing the Heat Shield |
|  |  |

*See* Compl. at ¶ 7.

Aligned's infringement does not appear to be accidental. As detailed in Switch's Complaint, Aligned retained Mr. Stephen Fairfax to design its data centers "at the blank page stage". *See* Compl. at ¶ 53. This was *after* Mr. Fairfax was given an in-depth tour of Switch's facilities and special access to Switch's designs. *See id*. at ¶¶ 2, 45. Mr. Fairfax also spent four hours with Switch's founder and inventor, Mr. Roy. During the meeting, Mr. Fairfax repeatedly assured Mr. Roy that he had no interest in building and operating data centers. *See id*. at 49. Despite these assurances—and despite the non-disclosure terms by which Mr. Fairfax agreed to be bound—Mr. Fairfax was involved in the design and execution of Aligned's data centers. *See id*. at ¶ 54. As alleged in its Complaint, Switch believes that Mr. Fairfax improperly encouraged

3

Aligned to implement Switch's patented technology in the design and makeup of the Aligned data centers. *See id.* at ¶ 55. Specifically, Aligned's facilities mimic Switch's patented technology covering: (i) physical infrastructure, heat containment cabinet layout, and configuration; (ii) electrical pathway configuration; and (iii) the interplay of various component parts. *See id.*

### III. ARGUMENT

#### A. Aligned's Argument Depends Only on Claim Construction Arguments that the Court Cannot Resolve on a Motion to Dismiss.

"Claim construction at the pleading stage—with no claim construction processes undertaken—[is] inappropriate." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012). In evaluating any merits-based "plausibility" on a motion to dismiss, "a district court should afford claims their broadest possible construction." *Gestion Proche, Inc. v. Dialight Corp.*, No. 4:16-CV-00407, 2017 WL 1551606, at *3 (E.D. Tex. May 1, 2017). Yet, rather than apply this well-known principle, Aligned asks the Court to dismiss Switch's Complaint based on incorrect claim construction arguments. The Court cannot do so.

1. Switch Plausibly Alleges the Claimed "Cool Art Ductwork."

Claim 10 of the '389 requires a "second plurality of vertical support brackets" that "support portions of the cool air ductwork below the thermal barrier ceiling." Aligned acknowledges that Switch *did* allege "cool air ductwork." Dkt. 57 at ¶ 58. Switch also alleged how Aligned's data centers practice the full requirements of the claims: "Because the eSync units are located on top of the thermal barrier ceiling, the floor mounted vertical support brackets [i.e., the second plurality of vertical support brackets] below the thermal barrier ceiling support the

4

cool air ductwork." *Id.* ¶ 59. In this way, the support brackets support the cool air ductwork below the thermal barrier ceiling.

According to Aligned, the claim requires that "cool air ductwork" must be below the thermal barrier ceiling. This is incorrect. The claim requires support brackets to support the ductwork below the thermal barrier ceiling, not that the ductwork *be* below the thermal barrier ceiling. Dkt. 57 at ¶ 59. Aligned makes no argument concerning the plausibility of Switch's allegation that e-Sync units are supported below the thermal barrier ceiling. At a minimum, this is a claim construction dispute to be resolved via the claim construction process, as established by Aligned's attempt to prove non-infringement on pleadings by reference to figures of preferred embodiments. This is plainly not a basis for dismissal. *In re Bill of Lading* 681 F.3d at 1343 n.13.

### 2. Switch Plausibly Alleges "An Opening Into the Airspace."

Claim 10 also requires "airspace between the ceiling and the thermal barrier ceiling" and that the "hot air containment chamber" provides "an opening into the airspace." Switch's complaint alleges that Aligned's data centers include a "hot air containment chamber," that chamber "provides an opening into the eSync units," that the "eSync units are located within the airspace between the ceiling and the thermal barrier ceiling," and that those units "output cooled air into the airspace." Dkt. 57 at ¶ 53. Aligned contends that these allegations fail to allege a plausible claim of infringement. But Aligned's only argument is based on an alleged inconsistency with the "cool air ductwork" limitation. As discussed above, this misinterpretation is based on an inappropriate claim construction argument. Because the "cool air ductwork" need not be located below the thermal barrier ceiling, only supported below the thermal barrier ceiling, Aligned's argument fails as to this limitation also.

### 3. Switch Plausibly Alleges "a First Horizontal Support Bracket."

Finally, Aligned disputes whether Switch has plausibly alleged a "first horizontal support bracket." Claim 10 requires "a first horizontal support bracket disposed above a cabinet height that intersects a middle hot aisle portion so that an area on two opposite sides of each hot aisle where the cabinets can be placed does not have any vertical support brackets disposed therein." As with the other disputed limitations, Switch's complaint alleges precisely how this limitation is met: "Vertical brackets are unnecessary here because any of the thermal shield horizontal support brackets, in combination with the other thermal shield horizontal supports and horizontal ceiling supports, provide sufficient support without them," Dkt. 57 at ¶ 55. Aligned does not dispute this point. Beyond this allegation, Aligned also acknowledges that Switch's infringement contentions identified exactly what Switch contends to be the claimed horizontal support brackets in Aligned's accused data centers. Dkt. 61 at 15 and n.4.

Nevertheless, Aligned contends that Switch has not alleged a plausible claim because Switch has not specifically pre-rebutted Aligned's non-infringement position and *explained* how Aligned's position is wrong. This is obviously not required in a complaint. It is clear that Aligned merely disagrees with Switch's contentions about what it means to "intersect a middle hot aisle portion" based on its merits-based contention that this limitation is met only in the way depicted in Figure 5 of the patent. Construing the facts in the light most favorable to Switch, as the Court must do, Aligned's data centers plausibly intersect "a middle hot aisle portion"—not "the center of the hot aisle"—with its horizontal supper brackets. Resolving this dispute requires fact finding concerning the plain and ordinary meaning the terms "intersect" and each word in "a middle hot aisle portion." For example, Aligned contends that Switch points to brackets that are "parallel" to the hot aisle, and thus cannot infringe. But those brackets are parallel only from a *horizontal* plane. Brackets (and anything else) can intersect vertical planes as well. Similarly,

some ceiling grids intersect the middle of the horizontal plane of the space where the hot aisle is located but at a point above the "hot" part of that aisle.  Dkt. 57 at ¶¶ 54-55.  The broadest interpretation of "hot aisle" can include that space also, and therefore Switch's allegations concerning the ceiling supports provide an alternative plausible basis for infringement.  To the extent Aligned asserts that these explanations are not contained in Switch's complaint, this is exactly the type of "exposition of legal argument" that is not required to plead a plausible claim. *Skinner*, 562 U.S. at 530.  In any event, this is all for resolution via claim construction, the discovery process, and at trial.  It is not a basis for dismissal.

### B. Aligned's Motion Otherwise Wastes the Court's Time With Irrelevant, False, or Misleading Facts.

In an apparent attempt to urge the Court to grant its motion on an inappropriate basis, Aligned also seeks to litigate other irrelevant facts in a motion filed under Rule 12(b)(6).  Aligned's motion itself is pointless, and these false and misleading factual assertions are even more meaningless.  Because the factual recitation is irrelevant, the Court need not read further.  However, to avoid allowing Aligned to paint its misleading picture, Switch will briefly respond.

Switch is always cautious and conscientious in all aspects of its business, including any allegations that another company has behaved unlawfully, whether those allegations concern patent infringement or any other claim.  Accordingly, Switch plainly did not "admit" an inadequate basis for filing suit.  Before Switch filed suit, it sought a discussion with Aligned by mentioning four of Switch's patents, including 9,622,389.  *See* Dkt. 57-2.  While Switch disclosed its strong belief that Aligned was infringing, that Aligned's "customer pod" seemed to "mirror" Switch's technology, and that Switch needed "to investigate potential *unauthorized practice of Switch's technology*," Switch did seek to establish a dialogue.  *Id.*  But after Aligned

7

sent Switch a threatening letter, Dkt. 57-4, that chance for dialogue apparently closed, leaving no choice but litigation.

Switch's actions since filing reflect nothing more than that conscientiousness it seeks to display in all aspects of its business. It is true that Switch's original infringement allegations were broader than they are now. any That is simply the nature of a continuing investigation and does not reflect any lack of attention on the part of Switch. Before filing, Aligned's threatening letter raised a host of incorrect non-infringement positions, while omitting discussion of other actually relevant aspects of Aligned's technical operation. *Compare, e.g.*, 57-4 (contending that Aligned does not use a "thermal shield" and that it must not infringe because it uses "microchannel coils" "directly over each rack") *with* Dkt. 8 at 9-10 (presenting new non-infringement positions related to the location of the "power feed"). Given the weakness of these original positions, combined with Mr. Fairfax's unlawful actions as well as Switch's own pre-suit investigation, Switch had a more than good-faith basis to file suit, a basis which included claim 10 of the '389 patent.[1] Yet as its investigation has continued—including by evaluating Aligned's representations in light of inspecting Aligned's demonstration unit, an inspection which Aligned inexplicably opposed—Switch has continued to operate in good faith by narrowing its allegations. For example, as Switch described in its Motion for Expedited Discovery, much of Aligned's publicly available information presents conflicting evidence, and an inspection was required to resolve these conflicts. Dkt. 25 at 1-2. Indeed, while Aligned accuses Switch of potentially using the inspection "to substitute for a proper pre-filing

---

[1] Aligned claims that Switch alleged "only" the claims specifically mentioned in Switch's original complaint but that complaint made clear that the claims listed in that complaint were merely exemplary. *See* Dkt. 1 ("Aligned's data centers infringe at least one claim of the '389 patent. *An example claim*, claim 1, recites: . . . ." (emphasis added)).

8

investigation," Dkt. 61 at 4 n.1, Aligned simultaneously concedes (as it must) that Switch's theory was and is based exclusively on publicly available information, not on the inspection. Dkt. 61 at 4 n.1.  If anything, the inspection allowed Switch to narrow this case earlier than it otherwise could have—saving both parties and the Court resources in the process.

Finally, Aligned contends that the Court should grant its motion because the Court, in concluding that Aligned's initial motion was moot, supposedly already "validated everything in Aligned's original motion to dismiss."  Dkt. 61 at 5.  This statement is unfounded and nonsensical.  As that order recognized, "an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  Dkt. 58 (quoting *Bosarge v. Mississippi Bureau of Narcotics,* 796 F.3d 435, 440 (5th Cir. 2015)).  The Court recognized nothing but that an amended complaint had been filed.  Aligned's statement that any inference can be drawn from that dismissal merely reflects its cavalier attitude toward law and facts that led to this baseless motion.

## IV.     CONCLUSION

Switch amended its complaint to narrow this case.  In doing so, it included far more detail than is required in an attempt to avoid a dispute (such as this) before the Court.  Rather than accept the well-pleaded Complaint for what it is, Aligned's motion does nothing more than argue the ultimate merits of the case. The merits of the case will be properly resolved via the claim construction process, discovery, and trial, not by a motion under Rule 12(b)(6).  Aligned's motion should be denied.

DATED: February 7, 2018               Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**ATTORNEYS FOR PLAINTIFF SWITCH, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on this 7th day of February, 2018. Local Rule CV-5(a)(3)(A).

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell