IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SWITCH, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-574-JRG |
| | § | |
| ALIGNED DATA CENTERS LLC | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT
ALIGNED DATA CENTERS, LLC'S MOTION TO DISMISS [DKT. NO. 61]**

I.  **ARGUMENT IN SUR-REPLY**

The Federal Circuit has clearly indicated that, on a motion to dismiss for failure to state a claim, this Court should give the claim its "*broadest possible construction.*" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012). Only when a defendant shows that a claim is implausible under this broadest possible construction is dismissal on the pleadings appropriate. Aligned has failed to make such a showing here.

**A. Under the "Broadest Possible Construction," Switch Has Plausibly Alleged the Claimed "Cool Air Ductwork."**

Aligned contends that Switch has somehow "rewrit[ten] the claim language" with its infringement theory, Dkt. 65 at 3. This contention is false; Switch has done no such thing. The "cool air ductwork" simply does not need not be below the thermal barrier ceiling. As Switch showed in its response, claim 10 of the '389 patent recites a *"second plurality of vertical support brackets"* that "support portions of the cool air ductwork below the thermal barrier ceiling." (Italics added). This is the only portion of the claim on which Aligned's argument is based. As is plain from its text, this limitation generally modifies the requirements of the claimed support brackets, not the location of the ductwork. The limitation requires that the support brackets support portions of the cool air ductwork and that the support brackets' supporting occur below the thermal barrier ceiling. Grammatically speaking, the clause "below the thermal barrier ceiling" modifies the word "support," not the phrase "cool air ductwork." This is the correct construction. But, at a minimum, it is at least a plausible or *possible* interpretation—an argument that Aligned addresses with mere say-so. *See* Dkt. 65 at 3-4 (contending, without explanation, that the only possible interpretation of plain language requires ductwork to be located below the thermal barrier ceiling). Therefore, Switch has adequately alleged a plausible claim, and Aligned's motion should be denied.

1

### B. The Court Should Reject Aligned's Invitation to Engage in Premature Claim Construction.

As Switch established in its response, claim construction beyond the "broadest possible construction" is inappropriate at the pleading stage. *In re Bill of Lading*, 681 F.3d at 1343 n.13. The Court should reject Aligned's plea to ignore this authority and should refuse to engage in claim construction at this stage of the litigation.

Aligned cites no case, and Switch is aware of none, where this Court has construed a claim at the motion to dismiss phase. This is not surprising: the Federal Circuit has expressly indicated that doing so would be error. The vast majority of district courts, including those in this District, agree. *Gestion Proche, Inc. v. Dialight Corp.*, No. 4:16-CV-00407, 2017 WL 1551606, at *3 (E.D. Tex. May 1, 2017) (courts must give claims "broadest possible construction" at pleading stage).[1] Indeed, in the wake of *Bill of Lading*, "[d]istrict courts have repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss or motion for judgment on the pleadings, the motion should be denied, because this type of analysis is inappropriate at the pleading stage." *Anglefix Tech, LLC v. NuVasive, Inc.*, No. 13-CV-983-BEN RBB, 2014 WL 197736, at *2 (S.D. Cal. Jan. 14, 2014). Here, the Court has already set forth a schedule to conduct claim construction, and the parties should resolve their dispute during that process.

Even the cases Aligned cites in its reply—applying an extreme minority position concerning claim construction at the motion to dismiss stage—confirm the inappropriateness of

---

[1] *Sonrai Sys., LLC v. AMCS Grp. Inc.*, No. 16 C 9404, 2017 WL 4281122, at *3 (N.D. Ill. Sept. 27, 2017) (same); *Sabert Corp. v. PWP Indus., Inc.*, No. CIV.A. 14-6500 MAS, 2015 WL 5007838, at *2 (D.N.J. Aug. 20, 2015) (same); *In re: Maxim Integrated Prod., Inc.*, No. MC 12-244, 2013 WL 12143883, at *3 (W.D. Pa. Mar. 19, 2013) (same).

Aligned's request here. The cases referenced by Aligned confine any claim construction analysis at the motion to dismiss phase to clearly legal issues, like lexicography. *Scripps Research Inst. v. Illumina, Inc.*, 2017 WL 1361623, at *5 (S.D. Cal. Apr. 14, 2017) (construing claim in light of lexicography argument while also noting that courts should decline to engage in claim construction if they believe additional briefing would be helpful). Those cases note that if the construction implicates any facts, construction at the pleading stage would be inappropriate. *Id.* at *5. Aligned's position here does not rest on a disclaimer. Instead, it exclusively relies on the understanding of the plain and ordinary meaning of the claims to a person of ordinary skill at the time of the invention. Whether that person of ordinary skill would understand Aligned's designs to read on Claim 10 is quintessentially unresolvable on Aligned's current 12(b)(6) motion.

## C. Aligned's Claim Construction Arguments Should Fail.

Even if the Court were inclined to consider the claim construction issues—contrary to binding precedent—Aligned has made no showing that the patent-in-suit *excludes* a construction where "below the thermal barrier ceiling" describes the "support" given by the vertical support brackets. Aligned makes two arguments in support of their construction. Neither argument actually bolsters its position. First, Aligned confusingly implies that Switch's construction, where "below the thermal barrier ceiling" modifies "support" not "cool air ductwork," would "exclude a preferred embodiment." Dkt. 65 at 7. This is obviously not true. Switch's preferred embodiment practices claim 10 because the second plurality of vertical support brackets support the cool air ductwork from below the thermal barrier ceiling; there are floor-mounted support brackets helping to support the ductwork. *See* '389 Patent, Fig. 4B. Switch's construction plainly does not *exclude* this embodiment.

Second, Aligned implies that its construction is correct based on the patent's specification. But again, Aligned fails to point to any part of the specification where Switch

3

allegedly disclaimed the construction it offers here. Instead, Aligned puzzlingly points out that the '389 patent describes the need to "completely segregate the hot air . . . from the cool air." Reply at 6 (emphasis in original). Segregating hot air from the cool air, however, has nothing to do with the parties' claim construction dispute concerning the location of the cool air ductwork. And there is simply no legitimate dispute that Aligned's data center design segregates the hot air from the cold air. This is no reason to require a construction that "below the thermal barrier ceiling" modifies "cool air ductwork" rather than "supports."

To the extent Aligned's argument makes sense at all, it appears to rest on an entirely new claim construction argument raised for the first time in Reply, implicitly asking the Court to *also* construe "thermal barrier ceiling" to exclude any theory except one that includes a physical structure that forms "an 'air tight seal' preventing the flow of air from above the thermal barrier ceiling to below." Dkt. 65 at 7-8 and n.3. This sort of shifting-sands claim construction approach simply confirms the need for a formal claim construction process and highlights the impropriety of this analysis at the pleading stage. In any event, although Switch's preferred embodiment includes a physical "air tight structure," the claimed thermal barrier ceiling need not be such a structure that physically prevents hot air from escaping. Nothing in the patent's specification excludes a definition of "thermal barrier ceiling" that is simply, for example, the top of a "hot air containment chamber" below which cool air does not fall. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Aligned has made no showing otherwise. Nevertheless, Aligned's hot air containment chamber *has* such a physical structure at the top of the chamber that prevents the

4

warm air and cold air from mixing. Dkt. 57 ¶¶ 60, 62 (showing structure at top of chamber).
While Aligned's thermal barrier ceiling is different than Switch's preferred embodiment,
Aligned's data center design still physically prevents cool air from mixing with the hot air
beneath the thermal barrier ceiling. These claim construction arguments, to the extent the Court
entertains them, also provide no basis for dismissal.

### D. Aligned's Motion Continues to Waste Time With Irrelevant, Misleading Arguments.

Lastly, Aligned faults Switch for "*ad hominem* attacks against Aligned." Reply at 9. Yet
Aligned does not dispute that it offered irrelevant facts in its opening motion. Switch discussed
these irrelevant details of the parties' dispute in an attempt to clarify the misleading facts
peppered throughout Aligned's Motion. As Switch's response makes clear, Switch conducted an
adequate pre-suit investigation and plainly never "admitted" to anything else. It also used the
inspection appropriately. While Aligned implies that Switch somehow received access to
Aligned's facility under false pretenses, Aligned *agreed* to allow that inspection, Dkt. 39, and it
has made no allegation that Switch has breached that agreement. Nor does Aligned dispute that
Switch's infringement theory rests on publicly available information. If information gleaned
from the inspection is reflected anywhere, it is only in Switch's ability to *correctly* evaluate
ambiguous public information in light of Aligned's repeated misleading or false written
representations concerning its own technology. *See, e.g.*, Dkt. 9 at Counterclaim ¶ 68
(contending that "polycarbonate hard containment windows are not thermal shields"). *Compare
also* Dkt. 8 (moving to dismiss because there are no "tiers" of ladder racks) *with* Dkt. 25-1 at ¶ 3
(showing tiered ladder racks). Contrary to Aligned's misleading assertions, Switch has litigated
this case conscientiously and in good faith, and Switch's election to narrow its case against
Aligned in light of its continuing investigation cannot be seen as anything else.

## II. CONCLUSION

As outlined above and in Switch's response, Aligned's motion should be denied.

DATED: February 22, 2018

Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**ATTORNEYS FOR PLAINTIFF SWITCH, LTD.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 22nd day of February, 2018.  Local Rule CV-5(a)(3)(A).

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
